WARREN, Appellant, v. A. B. MAYER MANUFACTURING COMPANY.

Division Two, March 12, 1901.

1. **Written Agreement:** VARIED BY SUBSEQUENT ORAL AGREEMENT: STATUTE OF FRAUDS. A subsequent oral agreement, made on a new and valuable consideration before the breach of the written agreement between the parties, if not within the statute of frauds, may enlarge the time of performing the written agreement or may vary

any other of its terms or may waive or discharge it altogether. But subsequent verbal changes or modifications, which the statute requires to be in writing, are not allowed to vary the rights of the parties under a written contract. By written contract, defendant agreed to sell plaintiff thirty or forty tons of iron at $9 per ton, and was not bound to pay for it until the whole amount was delivered. By subsequent oral agreement, plaintiff agreed to pay cash for the iron as fast as delivered, and to deposit $300 in advance as security for such payment. *Held*, that this verbal agreement, imposing a new burden, was not admissible as varying the written agreement.

2. ———: BREACH: MEASURE OF DAMAGES: MATERIAL FOR BUILDING. Defendant by written contract agreed to sell plaintiff iron columns in a building which was being torn down, at $9 per ton, which agreement he afterwards refused to perform. Plaintiff alleged the iron would have been worth $60 per ton in the construction of his own building for which he graded the ground at a cost of $150, but never built, and that he was at a further cost of $150 for pulling the columns down, which plaintiff had agreed to do at his own expense. *Held*, that plaintiff could not recover for the cost of grading the ground, nor was he entitled to what the iron would have been worth to him in the building, but the measure of damages was the value of such iron in that market at that time, together with his necessary expenses in taking down the columns.

3. ———: ———: ———: HOW PROVEN. Evidence of the value of that character of iron at that time by those acquainted with its market value, if a market value it had, was the proper method of estimating its value in an action for a breach of the contract of purchase. But if it had no market value, the next best evidence would be to ascertain its value from those whose experience in dealing in iron of this character would enable them to state its value, either as scrap iron, or as compared with new iron designed for the same purpose.

Appeal from St. Louis City Circuit Court.——*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*W. C.* and *J. C. Jones* for appellant.

Vol 161 mo—8

(1)    The court erred in rejecting evidence as to the value of the iron.    The witnesses should have been permitted to express their opinion of the value of the iron generally. Railroad v. Norcross, 137 Mo. 415; Simmons v. Carrier, 68 Mo. 417.    They should have been permitted to testify to its value for use in the building about to be constructed by the plaintiff as contradistinguished from its value as "scrap iron." Shouse v. Nieswanger, 18 Mo. App. 236; Cochran v. Railroad, 113 Mo. 359; Hadley v. Baxendale, 9 Exch. 341; Cory v. Thames I. Co., 3 Q. B. 181; Griffin v. Calver, 16 N. Y. 489; Vanstone v. Hopkins, 49 Mo. App. 390; Griffith v. Construction Co., 46 Mo. App. 544.    (2)    The court erred in the instruction given to the jury.    (a)    The modification of the contract relied upon by defendant was not shown to have any consideration to support it and was not therefore an enforcible modification.    3 Am. and Eng. Ency. of Law (1 Ed.), p. 890; Seybolt v. Railroad, 95 N. Y. 562; Hasbrook v. Winkler, 48 N. J. L. 431.    (b)    The modification of the contract was not enforcible because not evidenced by any writing as required by the statute of frauds.    Newman v. Watson, 70 Mo. App. 142; Rucker v. Harrington, 52 Mo. App. 48; Manufacturing Co. v. School Dist., 54 Mo. App. 371; Merrill v. Cent. Trust Co., 46 Mo. App. 236. (3) The court erred in excluding evidence offered to rebut the defendant's evidence.    (4)    Under the law and the evidence and the defendant's admissions, no valid defense was shown to the case made by the plaintiff, and the court should have directed a verdict for plaintiff, leaving to the jury only the question of the extent of plaintiff's damages.

*Lubke & Muench* for respondent.

(1)    Evidence as to the value of this iron, if used again

in a building, was improper. Plaintiff claimed that he had specially adapted his plans for a new building to the columns and beams which he expected to receive under this contract. That would not make them generally useful as building material. If plaintiff had been compelled to supply the deficiency by means of other columns conforming to those plans, the cost of such substituted material might have furnished a measure (and a proof) of his actual damages. He does not pretend, however, that no other like columns could be had, or that his failure to secure these hindered him in the erection of the proposed building. Without any apparent cause, he abandoned the plan of erecting any building. Under these circumstances, there is no basis for allowing damages in the amount of supposed difference between the contract price and the speculative value of the iron, provided the plaintiff had erected a building, which he did not do. City of Goldsboro v. Moffett, 49 Fed. Rep. 213; Griffin v. Colver, 16 N. Y. 489; Cox v. Volkert, 86 Mo. 505; Griffith v. K. C. Mat. and Con. Co., 46 Mo. App. 544; Sutherland on Dam. (2 Ed.), sec. 702, p. 1587. (2) The oral modification of the contract pleaded, constituting no fresh undertaking, but merely regulating the rendition of the same consideration already called for by the writing, needed no new consideration to be valid. It was well that appellant cited no authority from this State to support his theory that a written contract can not be modified by parol in any respect without a new consideration. Such is not the law of this State, concededly not since the decisions in the leading cases of Henning v. Ins. Co., 47 Mo. 425; Lanitz v. King, 93 Mo. 519; Smith v. Ham, 51 Mo. App. 437; King v. Greaves, 51 Mo. App. 544.

GANTT, J.—Plaintiff sued to recover damages to the amount of $3,060 for breach of a written contract evidenced

by the following proposal and acceptance:

"Mr. Thomas Warren, City:

"Dear Sir,—

"We have this day sold to you such portion of the front of building, northeast corner Eighth and Olive streets, and such other iron as you may select, for the sum of $9 per ton, net ton of 2000 pounds, delivered at Eleventh and North Market streets. You to take the iron down at your own expense.               Yours respectfully,

"A. B. Mayer Mfg. Co.,

"H. Mayer.

"It is understood that no wrought iron is included.

"Received and accepted July 12, 1895."

Plaintiff alleged that the said iron constituted the front of an old building, consisting of iron columns and beams, weighing about sixty tons; that he proceeded immediately to take down said columns and defendant commenced delivering; that after delivering nine tons defendant not only refused to deliver any more but retook that which he had delivered. That said iron columns had a special value to him because they were to be used in another building, which was well known to defendant; that said iron was worth $60 per ton, and he was damaged $3,060.

The answer was a general denial, and that before any iron was delivered, plaintiff and defendant mutually modified said contract by adding thereto an agreement that plaintiff would pay cash as and when said iron was delivered, and before the delivery of any part plaintiff would deposit $300 to be held as security for the payment of the iron as it should be delivered; that plaintiff failed and refused to make said deposit or payment, whereupon defendant declined to deliver the iron until plaintiff should pay as he had agreed.

Reply was a general denial.

It appeared from the evidence that a building on the northeast corner of Eighth and Olive streets, belonging to the Erskine estate, was to be wrecked to make room for a new building. The building was at least thirty years old, and the iron columns and beams in question were a part of the Eighth street and Olive street fronts. The wrecking seems to have been done by a firm named Arthur Johnson & Bro., from whom the defendant had purchased the iron for cash on delivery, and the contract with whom contained other conditions.

The plaintiff was brought to defendant by an intermediary named Streletzki, and at the defendant's office an agreement was arrived at to sell the structural portion of the iron to plaintiff at $9 per ton, the amount being roughly estimated at thirty or forty tons. Henry Mayer, an employe of defendant, wrote out the proposition on the typewriter, and brought it to Cassidy, the old bookkeeper of defendant. Cassidy glanced over the paper and then suggested the fact that the wrought iron was not included in the sale, and added the phrase below the signature that had been attached to the paper by Henry Mayer. Then the paper was handed by A. B. Mayer (president of defendant) to plaintiff, who placed it in his pocket, and moved toward the door with A. B. Mayer. Before they passed out Cassidy called them back, and reminded both parties of the fact that the contract with Johnson & Bro. required the iron to be thrown on the sidewalk, and the payment to be spot cash. Some conversation ensued, and then Warren acceded to the suggestion of Mayer for the iron as received, and further agreed to send up a $300 check on the next day to be security for the making by him of such payments. Within a few days, the iron was begun to be taken down, and the defendant removed some loads thereof to Eleventh and North Market streets. Warren did not send the $300 and A. B. Mayer looked him up at the old building,

and was again promised a check, which never came. Then defendant made out and presented bills to Warren for the iron already delivered which he refused to honor, and on July 16, 1895, wrote the following letter:

"St. Louis, Mo., July 16, 1895.

"A. B. Mayer Manufacturing Co.,

"1012 to 1022 North 12th street, city.

"Dear Sirs:—I hold your contract of sale for the front of building, northeast corner of 8th and Olive streets, and such other iron as I may select, for the sum of $9 per net ton of 2,000 pounds delivered at 11th and North Market street, I to take the iron down at my expense. This is to notify you that I will hold you responsible for any loss or damage resulting from your failure to comply fully with the terms of this agreement, and if you don't at once remove the iron I have had taken down, and deliver, as you agreed, I will feel at liberty to employ others to haul it there at your expense.

Respectfully,

"Thomas Warren."

On the same day defendant wrote plaintiff.

"Office of A. B. Mayer Mfg. Co.,

"St. Louis, July 16, 1895.

"Mr. Thomas Warren, City.

"Dear Sir: We hereby notify you that we refuse to deliver to you any of the iron that comes out of the building at northeast corner Eighth and Olive streets until you pay us for same, and you are hereby notified not to remove any of it until you pay for same and have our written consent.

"Yours respectfully,

"A. B. Mayer Mfg. Co.,

"J. A. Cassidy."

Upon plaintiff's refusal to pay, defendant resold the iron for the same amount to another party.

Three witnesses for defendant testified that Warren orally agreed to pay cash as the iron was delivered or deposit the $300 as security. Warren denied that he made this subsequent contract. He admits he never erected the building for which he says he was buying the old iron. He estimated his expense of taking down the front at $150 and says he was at a collateral expense of $150 in leveling his lot for said new building.

On the trial, plaintiff offered to testify what this old iron would have been worth in the building which he had contemplated building but did not build, but upon objection this testimony was rejected and he excepted.

Thomas, another witness for plaintiff was asked: "Will you please state what was the value of that iron, not as scrap iron, but for the purpose of being used in another building."

It being admitted no building was erected, counsel for defendant objected and the objection was sustained.

At the close of all the testimony the court of its own motion instructed the jury as follows:

"If you believe from the evidence that the letter of July 12, 1895, signed by the defendant, was accepted by the plaintiff, and became the only contract between the parties, then plaintiff was entitled to receive from the defendant all the iron called for in the said contract, and under the conditions thereof, and plaintiff was not required to pay in advance for such iron before its delivery to plaintiff, and if you further find, from the evidence, that the defendant did not deliver the said iron as they agreed to do in the said contract, and refused to deliver it, then your verdict should be for the plaintiff.

"In case you find for the plaintiff, you will assess his damages at such sum as you believe from the evidence he has been damaged by the failure of the defendant to carry out his contract, and in estimating such damage, you will take into

consideration the reasonable expense, if any, to which you believe, from the evidence, the plaintiff has been put to by reason of and on account of the defendant's failure to carry out his contract.

"But, on the other hand, if you believe from the evidence, that the plaintiff and defendant agreed, after signing the written contract of July 12, 1897, and before the delivery of any iron thereunder, that the plaintiff was to pay for the iron mentioned in the contract in advance, or make a deposit in cash in advance for its payment, and plaintiff failed and refused to make such payment or deposit, then defendant was not bound to deliver the said iron in the contract without such advance payment or deposit, and your verdict should be for the defendant. You should, in this connection, also remember that the burden of proving any agreed time or method of payment not mentioned in the written contract, is upon the party alleging such agreement, and in this case upon the defendant, who must show, by a preponderance of the evidence, that the agreement which they allege, as to the time or method of payment, was as alleged by them."

The verdict was for defendant.

After an unsuccessful motion for new trial plaintiff appealed to this court.

I.   The respective rights of the parties to this suit depend largely upon the admissibility of the evidence offered by defendant to prove a subsequent verbal agreement as to the time of the payment for the iron, and an offer upon its part to perform the contract in pursuance of this substituted agreement, and plaintiff's refusal to comply therewith.

It is contended by plaintiff that this evidence was incompetent and its admission error.

The general rule, conceded everywhere, is that no verbal agreement between the parties to a written contract made be-

fore or at the time of the execution of such contract is admissible to vary its terms or to affect its construction. All such verbal agreements are considered as merged in the written contract.

But this rule does not apply to a subsequent oral agreement made on a new and valuable consideration before the breach of the contract, if the same is not within the statute of frauds. Such a subsequent oral agreement may enlarge the time of performance or may vary any other terms of the contract or may waive or discharge it altogether.

Thus it was said by Lord DENMAN in Goss v. Lord Nugent, 5 Barn. & Adolph. 65: "After the agreement has been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreements, or in any manner to add to, or subtract from, or vary or qualify the terms of it, and thus to make a new contract, which is to be proved, partly by the written agreement, and partly by the subsequent verbal terms engrafted upon what will be thus left of the written agreement."

But while this is true as to a contract not required by the statute of frauds to be in writing, the great weight of authority in England and in this country is that subsequent verbal changes or modifications are not allowed to vary the rights of the parties under a written contract, which the statute requires to be in writing. [Marshall v. Lynn, 6 M. & W. 109; Hickman v. Haynes, L. R. 10 C. P. 605; Harvey v. Graham, 5 Adol. & Ell. 61; Goss v. Nugent, 5 Barn. & Adolph. 58; Stead v. Dawber, 2 P. & D. 447; Blood v. Goodrich, 9 Wend. 68; Emerson v. Slater, 22 How. (U. S.) 28.]

Lanitz v. King, 93 Mo. 519, relied upon by defendant, does not decide to the contrary; indeed, the court expressly declined to pass upon the effect of the statute of frauds, as

the case went off upon a question of pleading and the laches. of the plaintiff in that case.

The identical proposition here presented has not, so far as we have been able to discover by a somewhat laborious examination, been decided by this court, but has been very ably discussed by the Kansas City Court of Appeals in several cases, notably Rucker v. Harrington, 52 Mo. App. 481, in which Judge Ellison reviews both the English and American cases, and reaches the conclusion that subsequent oral variations of a written contract which was within the statute of frauds would support neither an action or a defense.

It is perfectly obvious that under our statute of frauds "no action" could be maintained upon a contract which the statute requires to be in writing, which rests partly in a writing and partly on parol evidence. [Goss v. Nugent, 5 Barn. & Adolph. 58; Marshall v. Lynn, 6 M. & W. 109.]

To this point there is an absolute unanimity of authority, but there are some authorities which hold that the performance of a contract is so dissociated from the contract itself that it is perfectly competent for the parties to agree upon a new and valuable consideration upon a different performance of the contract and if this substituted performance be accepted by the party entitled to performance, it satisfies the contract and is a barrier to any further insistence upon performance according to the terms of the orignal contract.

To this extent again there is a very general concurrence by the courts. [Long v. Hartwell, 34 N. J. L. 116.]

But one court, the Supreme Court of Massachusetts in Cummings v. Arnold, 3 Metc. 486, goes farther and holds that if an oral agreement is subsequently made for a substituted performance and an action is brought upon the original contract alleging non-performance by the defendant, the latter may answer that he has been ready to perform according to the

subsequent parol agreement, and has offered to do so, but has been prevented by the fault of plaintiff himself and this constitutes a defense. This doctrine the English courts and the Supreme Court of the United States deny and, we think, correctly. We think the reasoning of Judge ELLISON in Rucker v. Harrington, 52 Mo. App. 497, 498, is a complete answer to the doctrine announced in Cummings v. Arnold, 3 Met. 486. As said by the Kansas City Court of Appeals, Cuff v. Penn, 1 M. & S. 21, did not involve a construction of the statute of frauds and hence it is hard to discern why it was necessary to overrule it as being an incorrect construction of that statute. Equally hard is it to make that case authority for the rule announced in Cummings v. Arnold.

As said by Judge ELLISON, referring to what was said in Cuff v. Penn, that the principal design of the statute was that parties should not have burdensome contracts imposed upon them which they never made, "but a contract is only burdensome because of the consequence of performance flowing from it. *Per se* the contract is harmless. It is the performance that does the hurt. It is, therefore, at least, equally proper to say that the principal design of the statute was to protect parties from the *performance* of burdensome contracts which they never made."

"Such application of the statute only makes it necessary that parties have *a* contract in writing; then, under the guise of performance, the contract enforced is shown by parol," or rather an unexecuted oral agreement for a different performance. This, we hold, can not be done without nullifying the statute.

Applying now these principles to the parol evidence offered and admitted by the court over the objection of plaintiff to the effect that after the written agreement for the sale and delivery of the iron mentioned in said contract, a further verbal

agreement was made by plaintiff without any new or other valuable consideration for so doing, to pay defendant cash on the delivery of each load of iron and deposit his check for $300 as security for such payments, it is clear this was a material and substantial variation of the written contract and was not in writing.

By this new verbal arrangement a new burden was imposed upon plaintiff which he had not undertaken in his written agreement, as under his contract he was only bound to pay for the iron when the whole amount thereof was delivered.

In view of what has already been said, it was not admissible. The substituted performance was not carried out by plaintiff, and under the statute this oral agreement, executory as it was, was incapable of enforcement.

II. The measure of damages, if any suffered by plaintiff, becomes important in view of the conclusion we have reached as to the modification of the contract.

The court rejected plaintiff's offer to prove what this iron was worth to him for a building which he contemplated building.

He admitted he had never built the house. The contract was made July 12, 1895, and the trial occurred October, 1897, more than two years afterward. Plaintiff testified that he informed defendant that he wished to use the iron in erecting a building on Eleventh and North Market streets. It is hardly probable that he would have let an item of $360 stop an entire building.

The general rule is well established that on the failure of the vendor to deliver goods according to contract, the ordinary measure of damages is the difference between the contract price and the market value of the goods at the time when and the place where they should have been delivered. [Koeltz v. Bleckman, 46 Mo. 320; Northrup v. Cook, 39 Mo. 208; Rickey v.

Tenbroeck, 63 Mo. 563.]

Defendant was not chargeable with the cost of grading plaintiff's lot for a building, as it had no connection whatever with the sale of the iron and was certainly not within the contemplation of defendant when it sold the iron. But as plaintiff was put to the expense under his contract of pulling down the front, we think the reasonable cost of so doing is an element to be considered in estimating his damages. The defendant is liable, if at all, for such damages as naturally and reasonably resulted in the usual course of things from the breach of its contract.

The fact that plaintiff told defendant he intended the iron for a building, would not of itself enhance the value of the iron beyond what such iron could have been bought for in that market, if any such there was. There was no proof that other similar iron could not be had in the market. Had plaintiff erected his house and, by reason of the failure to get this iron, had been compelled to purchase other iron of like character at an increased cost, he would have fixed a definite rule for his damages, but as he has not built, the difference between the value of such iron in that market at that time, and the price he agreed to pay for this, together with his necessary expenses in taking down the front would seem to be the natural damages flowing from the breach in this case. The offer to prove peculiar value to him for the purpose for which he was buying it opens the door to conjecture and speculation.

Evidence of the value of that character of iron at that time by those acquainted with the market value thereof, if such there was, is the only feasible method of estimating the value of said iron. If there was no market value for such iron, then the next best evidence would be its value ascertained by those whose experience in dealing in iron of this character would enable them to state its value, either as scrap iron, or as compared

with new iron designed for the same purpose.

We think the court properly excluded the question in the form it was asked, and the objection was not well taken. For the error first noted, the judgment is reversed and the cause remanded for a new trial.

*Sherwood, P. J.,* and *Burgess, J.,* concur.