GEORGE W. IVES, Respondent, v. B. F. KIMLIN, Interpleader, Appellant.

Springfield Court of Appeals, January 3, 1910.

1. PLEADING: Practice: Interplea. Where a defendant bank, in a suit for money held on deposit, filed a petition asking that the plaintiff and another person be required to interplead for the money, and the interpleas were filed by the parties, and the case was tried on the issues therein raised, the question of the sufficiency of plaintiff's petition against the bank is not material.

2. REAL ESTATE: Contracts to Convey: Abstracts Showing Perfect Title. Where a contract to convey real estate provides that the grantor is to furnish a full and complete abstract, showing perfect title to said lands in him, the purchaser has the right to demand a title which shall protect him from anx-

iety. He should have a title which will enable him not only to hold his land but to hold it in peace, and if he wishes to sell it to be reasonably sure that no flaw or doubt will come to disturb its marketable value.

3. ——————: ——————: ——————: **Defect as to Name.** Where one Henrietta Paul, has an interest in lands and the abstract showed a deed from Martha H. Paul, but did not show that Henrietta and Martha H. were the same person, *held,* insufficient to show that Henrietta had parted with her title.

4. ——————: ——————: ——————: **Defect in Decree to Quiet Title.** Where land is devised to certain persons and their heirs, with the further provision that if they should die without issue, then said real estate should revert to the heirs of the testator, a decree quieting title against the unknown heirs of the devisees is not sufficient to perfect the title, for if they died without issue the title would revert to the heirs of the testator and if survived by issue, the latter took by will and not as heirs.

5. ——————: ——————: ——————: **Time for Setting Aside Decrees Quieting Title.** In a suit to quiet title against persons notified by publication, under sections 777 and 778, Revised Statutes 1899, the defendants had three years in which to appear and have the judgment set aside by showing a meritorious defense.

6. **CONTRACT: Agreement to Rely Upon Judgment of Third Party.** Where the parties have agreed to submit to and rely upon the judgment of an attorney on a land title, they cannot in the absence of fraud or collusion afterwards ask to substitute the judgment of the court for that of the party selected, and in such case they are bound by the judgment of the attorney, even though his opinion may be wrong.

7. **STATUTE OF FRAUDS: Contracts: When Subsequent Parol Cannot Vary Written Contract.** When the original contract must be in writing under the statute of frauds to be capable of enforcement, any subsequent change thereof must be in writing.

8. ——————: ——————: **When Subsequent Parol Agreement May Vary Written Contract.** Where the original contract is written but not required to be so under the statutes, it may be changed on sufficient consideration by subsequent parol agreement.

9. **CONTRACTS: Sufficiency of Assignment.** Where an assignor of a contract under which he had deposited a thousand dollars, as part payment for real estate to be paid when abstract showing perfect title was furnished, assigns his rights and interest

under the contract and all relief concerning the same; *held*, the assignee had a right to recover the thousand dollars on the failure of the owner of the land to furnish abstract showing perfect title.

10. **APPELLATE PRACTICE**: Sufficiency of Abstract: Narrative Form. Where the abstract of the record states in narrative form the filing of the bill of exceptions within the time allowed therefor, it is sufficient. If the respondent claims that the bill of exceptions was not in fact filed in time, then he should file an additional abstract in order that the court may determine the facts.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hall & Dane* and *Reeves & Lay* for appellant.

(1)   The subsequent agreement, if it bound Espenscheid to accept Harrison's judgment of the sufficiency of the abstract, would be at fatal variance with the original contract and void under the Statute of Frauds. Hamilton v. Brewing Co., 125 Mo. App. 579; Miller v. Goodrich Bros., 53 Mo. App. 430; Rucker v. Harrington, 52 Mo. App. 481; Warren v. Mayer Mfg. Co., 161 Mo. 112; Ringer v. Holzclaw, 112 Mo. 522; Harrison v. Railroad Co., 50 Mo. App. 332.   (2)   James S. Paul and Henrietta Paul, claiming through a devise in a will which read "absolutely to them, their heirs, but if they should die without issue, then said real estate shall revert and vest in my heirs equally, or share and share alike," could not convey an indefeasible fee to Ives. Warvelle on Abstracts (3d Ed.), secs. 387, 397; Roberts v. Crume, 173 Mo. 579; Haverstick Appeal, 103 Pa. St. 394; Butler v. Huestes, 68 Ill. 594; Haley v. Boston, 108 Mass. 576; Pratt v. Railroad, 130 Mo. App. 175; Chew v. Keller, 100 Mo. 369; Beacroft v. Strawn, 67 Ill. 28; Rand v. Sanger, 115 Mass. 124; Frazer v. Supervisors Peoria Co., 74 Ill. 282; Blair v. Vanblarcum, 71 Ill. 290; R. S. Mo. 1899, secs. 4592, 4593, 4645, 4646;

Bean v. Kenmuir, 86 Mo. 666; Harbison v. James, 90 Mo. 411; Munro v. Collins, 95 Mo. 33; Lewis v. Pitman, 101 Mo. 281; Redman v. Barger, 118 Mo. 658; Schorr v. Carter, 120 Mo. 409; Walter v. Dumtra, 152 Mo. 489; Yocum v. Siler, 160 Mo. 281; Sheppard v. Fisher, 206 Mo. 208; Grannon v. Albright, 183 Mo. 238; 67 L. R. A. 97; Tebow v. Dougherty, 205 Mo. 315. (3) Purchaser is not bound to accept a doubtful title, much less a title which is certainly bad. Green v. Ditsch, 143 Mo. 12. Berge v. Bock, 44 Mo. App. 69; Thompson v. Dickerson, 68 Mo. App. 535; Mastin v. Grimes, 88 Mo. 490. (4) The record title must be clear. Thompson v. Dickerson, 68 Mo. App. 535; Warvelle on Abstracts (3 Ed.), sec. 318.

*Harry Clymer* and *A. H. Harrison* for respondent.

(1) The pretended abstract of the record does not sufficiently show the filing of a bill of exceptions. The mere recital that the bill was filed appearing in the bill itself is not sufficient, and this appeal should be dismissed. Western Storage & Warehouse Co. v. Glasner, 150 Mo. 426; Reno v. Fitz Jarrell, 163 Mo. 411; Kampf v. Transit Co., 102 Mo. App. 314; Walser v. Wear, 128 Mo. 653. (2) We understand the rule to be well settled that oral evidence is admissible to show a distinct, collateral, contemporaneous agreement, independent of, and not varying the terms of a written contract, even though it relates to the same subject-matter. Brown v. Bowen, 90 Mo. 190; Greening v. Steele, 122 Mo. 294; Lumber Co. v. Warner, 93 Mo. 384; Roe v. Bank, 167 Mo. 427; Boggs v. Laundry Co., 171 Mo. 290; Printing Co. v. Pub. Co., 127 Mo. App. 148; 9 Ency. of Evid., pp. 350, 359. (3) The original contract provided that an abstract of title was to be furnished, and it must necessarily follow that some one was to determine the sufficiency of such title. Thompson v. Dickerson, 68 Mo. App. 535; Estel v. Railroad, 56 Mo. 285; Dinsmore v. Livingston County, 60 Mo. 241; Neman v. Donoghue,

50 Mo. 495; Williams v. Railroad, 112 Mo. 487; Chapman v. Railroad, 114 Mo. 549; Howard County v. Baker, 119 Mo. 407; Eldridge v. Fuhr, 59 Mo. App. 53; Chapman v. Eneberg, 95 Mo. App. 327; Williams v. Railway Co., 153 Mo. 545; Rodgers v. Rehard, 122 Mo. App. 122; McCormick v. St. Louis, 166 Mo. 327.

GRAY, J.—On the 15th day of April, 1908, plaintiff contracted in writing to sell his farm of about seven hundred acres, in Crawford county, to Samuel Espenchied, of Illinois. The price of the land was $9,000, and a lot situated in Salina, Kansas. The clause of the contract material to the issue, is as follows:

"The said party of the second part has this day deposited with the Crawford County Farmer's Bank, the sum of one thousand dollars which said sum is to be held by the said bank until the said party of the first part furnishes a full and complete abstract of the title showing a perfect title to said lands in the said party of the first part, and executes and deposits with said bank a general warranty deed conveying said farm to the said party of the second part, his heirs and assigns.

"The said party of the second part is to pay the balance of said purchase price of $8,000, on or before the 15th day of October, 1908."

It was claimed by the plaintiff that after the execution of this contract, and on the same day, there was a parol agreement between the parties, that one A. H. Harrison was to examine the abstract of title furnished by Ives, and when he had approved the same, the $1,000 deposited with the bank, was to be paid to the plaintiff.

In due time an abstract was made and delivered to Harrison, who failed to approve the title, as shown by the abstract and so notified Espenchied in writing. A short time after this notice, a letter was received from the attorney of Espenchied in Illinois, approving Harri-

son's objections to the title. After this letter had been received, Harrison instituted suits as attorney for Ives, to quiet the title to the lands, and also procured deeds from certain parties for the same purpose. About the 10th day of October, 1908, judgments were rendered in the circuit court of Crawford county, in the said suits so instituted by Harrison, and certified copies of these judgments were filed and shown in the abstracts with the deeds so procured and filed after Harrison's first examination. After these things had been done, Harrison approved the title and pronounced it good in Ives, and so notified the attorney for Espenchied.

June 1, 1908, Espenchied, in writing, signed all of his right in the contract with Ives to Kimlin, the appellant herein, and on October 16, the attorney for Kimlin wrote to Mr. Ives that he had examined the abstract and the title was not good, and charged that Harrison knew that the abstract was defective, and further stating that Mr. Kimlin had that day closed a deal for other lands, and would not buy Ives' property, for that reason, as well as the fact that he was to have a good title and the same had not been furnished, and also demanding the payment of the $1,000 deposit in the bank. This letter was received and Mr. Harrison was requested by Ives to write a letter to Mr. Kimlin, asking him to return the abstracts if he did not intend to complete the deal, and in reply thereto a letter was written by Kimlin's attorneys, stating that the abstracts were held subject to the order of Mr. Ives.

At the February term, 1909, Ives sued the Crawford County Farmers' Bank for the $1,000, stating his cause of action as follows: "And for his cause of action, the plaintiff avers that the defendant is indebted to him in the sum of $1,000 for and on account of money deposited with said defendant to be paid to this plaintiff on or before the 15th day of October, 1908." On the 15th day of February, the bank filed a petition asking that Ives and Kimlin be required to interplead for the

money. Interpleas were filed by both of the parties, and the cause was tried on issues therein raised, resulting in a judgment in favor of Ives, from which Kimlin has appealed to this court.

The appellant questioned the sufficiency of the petition filed by Ives against the bank. We do not consider this material at this time. Both parties to the contract were claiming the $1,000 deposit with the bank and filed their interpleas therefor, and the cause was tried upon the issues thereby made.

The abstract, as perfected by Harrison, did not show a marketable title in Ives in the property, and therefore, did not comply with the terms of the contract entered into on the 15th day of April, 1908. The judgments of the circuit court attempting to perfect the title, show the suits were commenced against the unknown heirs of Putnam Trask, Josiah B. Trask, Franklin Askins, William J. Farrar, Marvin A. Dunlap, R. P. Dunlap, Andrew H. Trask, Henrietta Paul and Napoleon B. Trask, and, of course, notice was given by publication.

When Harrison approved the abstract, the evidence does not show that the term of court had adjourned, and even if it had, the parties defendants in that suit, under the provisions of sections 777 and 778, Revised Statutes 1899, had three years' time in which to appear in court and have the judgment set aside by showing a meritorious defense. And even though it be admitted that the judgment perfected the title as to all the parties named therein, yet the abstract shows that there were serious defects in Ives' title other than the ones attempted to be cured by the suits. The title to eighty acres of the land was in the following condition: One James Sanders, who owned the same, made a will on the 28th day of June, 1882, disposing of this tract of land as follows: "I do hereby give and bequeath unto my grandchildren, James S. Paul and Henrietta Paul, minor heirs of Martha L. Paul, deceased, the following described real

estate, to-wit: The S. W. 1-4 of N. W. 1-4 and the N. W. 1-4 of the S. W. 1-4 of Section 26, Township 37, Range 3. Absolutely to them, their heirs, but if they should die without issue, then said real estate shall revert and vest in my heirs, equally, or share and share alike."

A warranty deed, dated June 1, 1883, from Martha H. Paul and James S. Paul, to Mr. Ives to this tract of land, was shown in the abstract. But the abstract did not show any conveyance from Henrietta Paul or that Martha H. Paul and Henrietta Paul were one and the same person.

In making the unknown heirs of Henrietta Paul parties to the suit to quiet title, the attorney for Mr. Ives must have construed the will as giving to James S. Paul and Henrietta Paul an absolute fee simple title to the land without condition or contingency. Our opinion is, that whether we construe that clause of the will as vesting in James Paul and Henrietta Paul a life estate or an estate in fee, it is immaterial to the issues in this case. If a life estate only vested, then upon their deaths, the absolute title passed to their children, if any, and if none survived, then to the heirs of James Sanders, and in that event, the children took under the will of James Sanders, and not from their parents. If a fee was transferred, then such estate was liable to be defeated upon the contingency of them dying without children. [Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471; Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162; Yocum v. Siler, 160 Mo. 281, 61 S. W. 208; Haring v. Shelton, 122 S. W. 13; Hopkins v. Hopkins, 122 S. W. 15.]

The abstract did not show whether James Paul or Henrietta Paul was ever married, or that either of them was dead, and if so, whether or not any children survived. If they died without leaving children, then under the terms of the will, as we have construed it, the title to the real estate willed to them, vested at their death, in the heirs of James Sanders. The heirs of James Sanders were not made parties to this suit, and

neither were the heirs of James Paul, and therefore, the title shown by the abstract was not the title that Ives agreed to give in his written contract.

It is claimed by respondent Ives, that the court found in its judgment that the title was perfected in Ives by limitation. Should we concede that the judgment perfected a title in Ives as against all the parties named in the suit in which they were rendered, yet the heirs of James Sanders were not parties to that suit, and therefore, their interests in the property were not affected thereby.

Under the laws of this State, a purchaser of lands has the right to demand the title which shall protect him from anxiety. He should have a title which would enable him, not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value. [Mastin v. Grimes, 88 Mo. 478.]

Under the contract between the parties, Ives agreed to furnish a full and complete abstract of the title, showing a perfect title to said lands in him. Speaking of a similar contract in Bruce v. Wolfe, 102 Mo. App. 389, 76 S. W. 723, the Kansas City Court of Appeals said: "The contract called for a clear abstract of title, that is, a perfect title. Whereas he may have had a good title in law by reason of his occupation under color and claim of title, it could not be so shown by an abstract. The purchaser was not bound to take the land and incur the risk of successfully defending the title."

It is claimed by respondent Ives, that by the parol agreement made after the written contract was entered into, it was agreed that the $1,000 was to be paid, not when Ives presented an abstract showing perfect title, but when the attorney, Harrison, pronounced the abstract good after an examination by him.

It is true, as contended by respondent, that where the parties have agreed to submit to, and rely upon the judgment of an attorney whom they have selected, they

Ives v. Kimlin.

cannot in the absence of fraud or collusion, afterwards ask to substitute the judgment of the court for that of the party selected. And it may be further stated, that where a contract provides that the title of the vendor shall be such as shall be approved by an attorney, then the approval and judgment of such attorney in the absence of fraud or collusion, is binding upon the parties, even though the attorney's opinion is wrong. But in this case, the testimony of the party relying on the agreement to submit the abstract to the attorney selected by Espenchied, shows that this agreement was made on the day the original contract was entered into, and subsequently an abstract was delivered to Harrison, who examined the same and rejected it. The further fact stands admitted that it was agreed that the abstract did not convey a good title, and the same was to be perfected by suits in the courts. After this was done, Harrison became the attorney of the vendor in the litigation to perfect the title, and under such circumstances it is doubtful whether the agreement first made to accept his judgment, would apply after he had rejected the abstract and had become the attorney of the vendor for the purpose of perfecting the title. It is not necessary, however, to decide this proposition in determining this controversy. The original contract required an abstract showing a perfect title, and when this was delivered, the $1,000 in controversy was to be paid.

The claim of the respondent Ives to the $1,000 is not upon this contract, but upon an alleged subsequent parol agreement, by the terms of which the $1,000 was to be paid when Harrison approved the abstract, and a title approved by Harrison was to become the title appellant's assignor was to accept, whether good or bad, and as a substitute for the title he was to have under the terms of the legal contract.

When the testimony of this parol agreement was offered, the appellant objected and has preserved his objections and exceptions claiming that the parol agree-

ment, under the laws of this State, was not admissible to vary the terms of the previously executed written contract. In this contention he is undoubtedly correct. [Warren v. Mayer Mfg. Co., 161 Mo. 112, 61 S. W. 644; Rucker v. Harrington, 52 Mo. App. 481.]

In Rucker v. Harrington, supra, Judge ELLISON reviewed the authorities at length upon the question, and clearly declared the law as follows: "It is true that at common law, while you could not vary the terms of a written contract by prior agreements or stipulations, yet you might do so, on sufficient consideration, by subsequent oral agreement. But in such case the original agreement, as has been already stated, need not have been in writing; but in a case under the statute an entirely different phase is presented. It should be apparent that if the original contract must be in writing, to be capable of enforcement, any subsequent change therein must likewise be in writing. It is difficult to find argument to sustain this proposition, simply from the fact that it is self-evident. It will not do to say that the statute only has reference to or prohibits an entire new deal or change of contract, for we have already seen that the entire contract, substantially as made is within the terms of the statute. And, as applied to this case, it must be admitted that the original contract could never have been enforced by plaintiff, since he did not have the title he therein agreed to convey. He is thus compelled to sustain his cause of action by the subsequent oral contract, the subject-matter of which oral contract is found in the original writing, while the contract itself is found in the subsequent oral agreement, connecting itself with the writing for a part of its terms. To enforce such a contract would be to practically nullify the statute." This decision is reviewed the Supreme Court in Warren v. Mayer M'fg. Co., a, and its doctrine declared by that court to be the f this State.

The decisions of our State are in perfect harmony with the majority of the opinions of other States upon the same subject. For a list of these authorities, reference is made to the note of Nonamaker v. Jacob J. Amos, 4 L. R. A. (N. S.) 980.

Counsel for respondent has cited us to a number of decisions in this State, holding that a written contract may be modified by subsequent parol agreements. By an examination of these cases, it will be found that they have reference to contracts which the law did not require to be in writing in the first instance.

The claim is also made that the subsequent agreement does not vary the terms of the written contract. We think differently. By the terms of the original contract, the vendee was to have an abstract showing a perfect title, and when this was furnished to him, the $1,000 should be paid. By the terms of the subsequent parol agreement, the $1,000 was to be paid when Harrison said the title was good, and in addition thereto, the vendee was to accept a title pronounced good by Harrison, whether it was in fact good or not. The abstract furnished did not show the title required by the terms of the written agreement, and therefore, under the terms of the written agreement the $1,000 was not due, and the vendee was not required to complete the purchase of the land.

In Warren v. Mayer M'fg. Co., supra, by the written contract defendant agreed to sell plaintiff thirty or forty tons of iron at $9 per ton, and was not bound to pay for it until the whole amount was delivered. By the subsequent oral agreement, plaintiff agreed to pay cash for the iron as fast as delivered. It was held that this verbal agreement imposed a new burden, and was not admissible as varying the written agreement.

In Rucker v Harrington, supra, a written cont? was executed for the sale of land, by the terms of ? the purchaser was to have a marketable title. ? sought to show that when the abstract was ex?

such title was not shown, and thereupon the parties agreed that $300 should be deducted from the purchase price and the defect would be waived in consideration thereof. The court held the oral agreement was void, and that it should not have been admitted in evidence.

The respondent insists that the assignment by Espenchied to Kimlin does not give to Kimlin the right to the $1,000 in controversy. The contract is signed by Espenchied, and by its terms there was sold and assigned to Kimlin all the right and interest that Espenchied had in and under the written contract between him and Ives, and a copy of the written contract was attached or written on this assignment, and in addition to the assigning of his rights and interest, "all relief concerning the same was also assigned." We believe this sufficient to give Kimlin the right to the $1,000 paid by his assignor.

The respondent Ives, asked that the appeal be dismissed because the appellant's abstract of the record does not show the filing of the bill of exceptions. The abstract of the record recites that the time for filing the bill of exceptions expired on the 31st day of December, 1909, and "on the 19th day of October, 1909, interpleader, appellant, presented to said Woodside, the judge of said circuit court, his bill of exceptions, being the same as hereinafter set forth, and the same was then by said Woodside, as said judge, after being found correct by said Woodside as said judge, allowed, signed, sealed and ordered to be filed and made a part of the record of said cause, and a part of the record of said circuit court, and the same was thereupon so filed and was made a part of said record."

This court has heretofore held that an abstract of the record which states in narrative form the filing of the bill of exceptions in the manner above set forth, is sufficient. If the respondent claims that the bill of exceptions was not, in fact filed in time, then he should

file an additional abstract in order that the court may determine the fact.

From what we have said, the judgment of the trial court is for the wrong party. It is therefore ordered that the same be reversed and the cause remanded to the circuit court with directions to enter judgment in favor of the interpleader, Kimlin, for the $1,000. All concur.