PACIFIC TELEPHONE & TELEGRAPH CO. v. DAVENPORT INDEPENDENT TELEPHONE CO.*

(Circuit Court of Appeals, Ninth Circuit. November 6, 1916.)

No. 2693.

1. Specific Performance ☞29(1)—Contracts—Certainty.

A contract for the purchase and sale of the property of a telephone company is sufficiently definite to be specifically enforced, where representatives of the contracting parties had no difficulty in identifying and appraising the property in accordance with the provisions of the contract, for that is certain which can be made certain.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 69, 70; Dec. Dig. ☞29(1).]

2. Vendor and Purchaser ☞137—Contract—Construction—Sufficiency of Title.

A contract for the purchase and sale of the property of complainant telephone company, after providing for appraisal, recited that upon the fixing of the value defendant would pay the amount fixed, and complainant would convey that portion of its property which defendant might lawfully acquire; the title to such property being acceptable to defendant's at-

torneys. Complainant admitted that the contract made defendant the judge of what property of complainant it might legally acquire. *Held* that, in view of such concession, specific performance cannot be enforced where the title to the property was not acceptable to defendant's attorneys, and they were not acting arbitrarily or capriciously, for it is competent for parties to stipulate that the title of the vendor shall be such as will be pronounced good by a specified attorney, and disapproval, if in good faith, is conclusive.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 260; Dec. Dig. ⬤⇒137.]

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Bill by the Davenport Independent Telephone Company, a corporation, against the Pacific Telephone & Telegraph Company, a corporation. From a decree for complainant, defendant appeals. Reversed, with directions to dismiss the bill.

June 20, 1914, the appellee (complainant in the court below) was in possession of and operating a telephone system in Lincoln county, state of Washington, consisting of approximately 300 miles of telephone wires, strung on poles and reaching and serving the towns of Davenport, Reardan, and Peach, in that county, and also a local exchange in Davenport, consisting of wires and poles connecting with the suburban lines mentioned, and was in possession of a large number of telephone poles, cross-arms, insulators, storage batteries, converters, and other property incidental to its telephone business, and was also in possession of a telephone line extending from Davenport to the city of Spokane, which was used as a toll line for connection with that city and with towns in Eastern Washington and Northern Idaho by patrons of the telephone exchanges at Davenport and Reardan.

On the said 20th day of June the appellant (defendant in the court below), through its president, wrote to the president of the appellee the following:

"The Pacific Telephone and Telegraph Company.

"Office of the Division Commercial Superintendent.

"G. E. Hickman.                                      Spokane, June 20, 1914.

"Mr. A. T. West, Spokane, Washington—Dear Sir: Confirming our conversation of to-day:

"1. In the event of the consolidation of the two exchanges now in Spokane, the Pacific Telephone & Telegraph Company agrees to make a contract with the Davenport Independent Telephone Company, giving the Davenport Company a connection with the consolidated exchange, and through that exchange with the system of the Interstate Company, under the same terms and conditions as that connection is now given to the Davenport Company by the Home Telephone Company of Spokane.

"2. In the event that the Davenport Company desires to sell its property to the Pacific Company, and so notifies the Pacific Company in writing within 60 days from this date, an appraisement shall be made of the reproduction value, new, of the property of the Davenport Company by you, representing the Davenport Company, and by one of our engineers, representing this company, and, in the event of your failure to agree with our representative, the value is to be fixed by a third person selected by you and our engineer, and the Pacific Company will thereupon pay the amount so fixed, and the Davenport Company will thereupon convey to the Pacific Company that portion of its property which the Pacific Company may lawfully acquire, the title to such property to be acceptable to the attorneys for this company.

"Our Mr. Hickman is authorized to take up with you any matters in this connection.

"Yours very truly,                          G. E. McFarland, President."

In answer to the foregoing communication the president of the appellee wrote as follows:

"Spokane, Wash., Aug. 10, 1914.

"The Pacific Telephone & Telegraph Co., Mr. G. E. Hickman, Div. Com'l Sup't, Spokane, Wash.—Gentlemen: Please be advised that we desire to sell our property to you in accordance with conditions outlined in President McFarland's letter of June 20th last, addressed to the writer.

"Yours very truly,        Davenport Independent Telephone Co.,

"By A. T. West, President."

Thereafter the appellant appointed as its engineer H. J. Tinkham to act with Mr. West in making an appraisement of the reproduction value of the property of complainant, for the purpose of fixing the price to be paid by the defendant to the suit therefor, which appraisers examined the property, and on the 5th day of October, 1914, fixed the said reproduction value at $34,623.00, by a writing in words and figures as follows:

"Price agreed upon as reproduction cost of Davenport Ind. Tel. Co. property, $34,623.00.                                H. J. Tinkham.

"Spokane, Wash., Oct. 5th.                         A. T. West."

The suit being brought to enforce the specific performance of the contract, the defendant thereto set up, among other things, that the writings between the parties did not constitute a valid contract; that the attorneys for the defendant to the suit examined the title to the properties referred to, and that such title was not acceptable to them, and that they so advised their client; that the complainant has not, as a matter of fact, a merchantable title to the said properties; that the complainant had not even a franchise or permit to operate an exchange in the city of Davenport; that on June 20, 1914, and for many years theretofore, and ever since, the defendant has been engaged in interstate commerce in telephonic communication between the states of Idaho and Washington, and has controlled and operated telephone lines between nearly all of the cities and towns in the state of Idaho in the northern part thereof, and nearly all of the cities and towns in the state of Washington, whereby the people residing or being in one state may have and do communicate telephonically through the lines operated by the defendant with the people residing or being in the other state; that on said June 20th, and before and since, the toll lines which the complainant claims to own, extending from Davenport and Reardan and other communities to Spokane, were connected telephonically with the lines of a system which was being operated in competition with the defendant's lines between Eastern Washington and Northern Idaho, which system belonged to the Interstate Telephone Company and the Home Company of Spokane, and that there was a contract between the complainant and the other companies providing for such connection, and by virtue thereof the complainant was engaged in interstate commerce, transmitting telephone messages between various points in the state of Washington and various points in the state of Idaho, whereby those resident or being in one state could and did talk over the said lines with those resident or being in the other state; that in July, 1913, the United States government brought an action in the United States District Court for the state of Oregon against the defendant to this suit and other companies for the purpose, among other things, of preventing this defendant from acquiring the properties of the Interstate Company and the Home Company referred to, upon the ground that such acquisition would violate the terms of the Sherman Anti-Trust Act, and in said action, prior to June 20, 1914, a decree was entered perpetually enjoining the defendant from the present suit from acquiring said properties, with the qualification that, if the local authorities of the city of Spokane should decide in favor of a consolidation of the two exchanges in that city, namely, the Home exchange and this defendant's exchange, then said decree might be modified to permit such consolidation, but with the proviso that the Interstate Company should be connected with and have the benefit of such consolidated exchanges, and said competition in interstate telephonic communication should be continued, all of which was well known to the complainant on June 20, 1914; that the defendant to this suit at that time desired to have said two exchanges thus consolidated, and expected to obtain municipal consent there-

to; that in order to protect the complainant in its connection in Spokane, and thereby with the system of the Interstate Company, and to protect its interstate business, the defendant to this suit agreed with Mr. West as set forth in paragraph 1 of the said letter of June 20, 1914; that the sale of the property in question would be in violation of the Sherman Anti-Trust Act, in that the same would be in restraint of commerce in telephonic communication between the two states mentioned, and would tend to monopolize such commerce; that said sale would also be in violation of the said decree in the suit brought by the United States government, which decree was known to the complainant on June 20, 1914; that the complainant has a full, complete, and adequate remedy at law; and that the court is without jurisdiction in equity.

The issue made between the parties in respect to the alleged part performance of the contract sued on having been determined in favor of the defendant to the suit by the court below, no further reference to it need be here made. The trial court held that the contract sued on violated neither of the provisions of the Sherman Anti-Trust Act nor the decree of the United States court for the District of Oregon, and, further holding that the title to the property covered by the contract sued on, tendered by the complainant, was a marketable title, and that, notwithstanding the objections made to it by the attorneys of the defendant to the suit, the latter was bound to accept the title and pay the purchase price in accordance with its promise, decreed a specific performance as prayed for, from which decree the present appeal comes.

Post, Avery & Higgins, of Spokane, Wash. (Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellant.

Turner & Geraghty, of Spokane, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The only uncertainty we see about the contract is the absence of a specific description of the property; but that that is certain which can be made certain is an axiom of the law, and the record shows that the representatives of the respective parties had no difficulty in identifying and appraising the property in accordance with the provisions of the contract. We therefore think the court below was quite right in not holding it void for uncertainty.

[2] But according to its express provisions, upon the fixing of the value of the property in the way agreed upon, the appellant was required to pay such value for, and the appellee to convey to the appellant, "that portion of its property which the Pacific Company [appellee] may lawfully acquire, the title to such property to be acceptable to the attorneys for this company." The record shows that the appellant refused to accept, and consequently to pay for, any portion of the property in question, first on the ground that it could not lawfully acquire any of it, and on the further ground that the appellee's title to the property was not acceptable to the appellant's attorneys. There is nothing in the record even tending to show that the action of either the appellant or its attorneys in the respects indicated was in bad faith, arbitrary, or in any way capricious. According to the express admissions made in the brief of the learned counsel for the appellee, the determination of the question as to whether the appellant could lawfully acquire any of the property was, by the contract, vested solely in the appellant. To show that we make no mistake in regard to that matter we quote from the appellee's brief as follows:

"The offer was for all the properties of the appellee, at a price to be fixed by appraisers, but to be fully complied with by the conveyance of such portion thereof as the appellant might lawfully acquire. Now, where is the uncertainty? The matter was not left open to further parley between the parties, because the appellee had agreed to convey all its property. It was not a matter to be determined by the preconceived view of attorneys on either side, as suggested by appellant, because the legal rights of suitors are not foreclosed in that manner. Clearly it was a matter for the determination of the appellant alone. It could take all the properties, if it thought such a purchase innocuous to the law. If it doubted its right to purchase all, it could take any part that it conceived it had a right to take. Can it be said that there is any uncertainty in a contract of purchase which gives the right to purchase, for a certain specified sum, all of a specified list of properties or such part thereof as the vendee may choose to take? Such a contract simply confers an election on the purchaser to be exercised by him at his option. Absolutely no will was to be consulted under this contract, but that of the appellant. The contract stood for all or a part, as the appellant itself might determine.
* * *

"If the appellant had been the actor, and had come into court for a specific performance, alleging either that it might lawfully acquire the whole of the property, or that it might lawfully acquire a part thereof, and praying specific performance in whole or in part as the case might be, it could not have been said that there was such uncertainty as to what it had agreed to do, or what the appellee had agreed to do, that specific performance would have been denied. The appellant had agreed to pay the reproduction value of all the properties. The appellee had agreed to convey all or any part of the properties that the appellant might conceive it had a right to purchase, and its election on that point, we submit, could not have been contested. Manifestly if the contract is sufficiently certain for the purposes of the appellant, it must be for those of the appellee. There must be mutuality.

"On this bill brought by the appellee there were two courses open to the court for the determination of the property to be conveyed: (a) It could have required the appellant to elect whether it would take all or only part of the property, as it would have been required to elect if it had been the moving party. (b) It could go on and determine for itself whether appellant might lawfully acquire all, or only a portion, of the property, and make a decree accordingly."

Passing that consideration, however, the refusal of the appellant to make the purchase being also based on the ground that the appellee's title to the property was not acceptable to the appellant's attorneys, and the evidence not only failing to show any bad faith, or arbitrary or capricious action, in that regard, but that the rejection of the title by the attorneys for the appellant was based upon defects which were clearly debatable, and at least not free from doubt, we regard it as clear that the decree enforcing the specific performance of the contract cannot be sustained. In 39 Cyc. 1509, 1510, it is said:

"It is perfectly competent for the parties to stipulate that the title of the vendor shall be such as will be pronounced good and merchantable by an attorney, title or trust company, or other third person, and the purchaser will not be required to take a title not so pronounced good so long as there is good faith, although the court may deem it good under the law. Under such a contract the approval or disapproval of such third person is conclusive, if made in good faith, and with no improper motive, although in the opinion of the court the title may be good as a matter of law."

See, also, Allen v. Pockwitz, 103 Cal. 85, 36 Pac. 1039, 42 Am. St. Rep. 99; Watts v. Holland, 86 Va. 999, 11 S. E. 1015; Atwood v. Fagan (Tex. Civ. App.) 134 S. W. 765; Ives v. Kimlin, 140 Mo. App. 293, 124 S. W. 23; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905.

236 F.—56

It results that the judgment must be and is hereby reversed, with directions to the court below to dismiss the bill; the appellant to recover costs in both courts.