PEOPLE'S STATE BANK OF TYLER v. MONSEY OIL CO. et al.  (No. 3415.) *

Court of Civil Appeals of Texas. Texarkana. July 1, 1927.

Rehearing Denied July 7, 1927.

1. Sales ⬅️88—On conflicting evidence, peremptory instruction for plaintiffs suing for money paid for goods on ground of conclusive showing that lease was not assigned held error.

In action by buyers of tools, machinery, and furnishings to recover money paid in trust to be held until conditions of sale were complied with, where evidence as to whether sale of property in question was conditioned on transfer to purchaser of lease on certain property was conflicting, peremptorily instructing to return verdict for plaintiffs on ground that it conclusively appeared that lease was not so assigned cannot be upheld on appeal.

2. Sales ⬅️135—Buyer may refuse to take good title not pronounced good by his attorney acting in good faith.

Buyer may stipulate that seller's title must be pronounced good by his attorney, and may refuse to take good title not so pronounced by his attorney who acts in good faith.

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 9, 1927.

**3. Sales ☞396—In buyer's action to recover purchase money, defendant has burden to allege and prove refusal of buyer's attorney to approve title was due to bad faith.**

Where condition of sale of personal property is that buyer's attorney approve title, in buyer's action to recover money deposited on condition, defendant has burden to plead and prove refusal of buyer's attorney to approve title as required by contract of sale was due to bad faith.

**4. Sales ☞396—In buyer's action to recover purchase money, answer held sufficient to allege bad faith of buyer's attorney refusing to approve title.**

Where alleged condition of sale of tools, machinery, and equipment was that title to property should be approved by buyer's attorney, answer alleging that seller secured title to property by oral transfer thereof and offered it to buyer, and that buyer's attorney without cause or reason made eccentric demand that seller foreclose its chattel mortgage lien on such chattels, sufficiently alleged bad faith by attorney in refusing to approve title.

**5. Sales ☞398—Evidence that refusal of title by buyer's attorney was not in bad faith held to justify peremptory instruction for buyer suing for return of purchase money.**

In buyer's action to recover purchase money deposited on condition that buyer's attorney should approve seller's title, which attorney found doubtful, evidence that property transferred by insolvent corporation to seller to satisfy $3,000 debt was worth $5,250 *held* to justify peremptory instruction to find for plaintiff.

**6. Fraudulent conveyances ☞87(2)—Debtor's transfer of more than enough property to pay debt may be set aside as fraudulent.**

Insolvent debtor may pay indebtedness with property, but creditor may not receive property in value more than reasonably necessary to satisfy indebtedness, and if he does, other creditors may have transaction set aside as fraudulent.

**7. Sales ☞139—Buyer's refusal to accept property based on its attorney's failure to approve title may be exercised regardless of motive.**

Buyer having legal right to have attorney's approval of title before completing purchase of property may insist thereon and refuse to accept property of whose title attorney in good faith disapproves, regardless of its motive therefor.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by the Monsey Oil Company and another against the People's State Bank of Tyler. From a judgment for plaintiffs, defendant appeals. Affirmed.

November 3, 1925, C. J. Brogan, then vice president of the appellant bank, entered into an agreement with the appellee oil company, a copartnership composed of T. E. Swann and P. O. Monsey, whereby Brogan undertook to sell and the oil company on conditions specified undertook to buy property of the Tyler Vulcanizing & Battery Company, a corporation under the laws of Texas operating a filling station and automobile repair shop in a building in the city of Tyler leased by it from the owners thereof. The property in question, according to Brogan, was tools, machinery, and furnishings used by the battery company in carrying on its business and which it had mortgaged to the bank to secure indebtedness to it. Brogan claimed the battery company had turned over the property to the bank on account of indebtedness it owed the bank, and that he was acting for the bank when he entered into the agreement with the oil company. The oil company claimed Brogan acted for the battery company, and that its agreement was with that company and not with the bank, and was to purchase the "furniture, fixtures, tools, equipment, and merchandise" belonging to the battery company, and not merely the tools, machinery, and furnishings covered by mortgages of that company to the bank. The agreement was a verbal one. The oil company claimed that the conditions referred to, upon a compliance with which it agreed to purchase the property, were that the lease on the building referred to should be assigned to it and that title to the property satisfactory to its attorney, appellee T. B. Ramey, Jr., should be transferred to it. At the time the agreement was entered into the oil company turned over $5,250 (the amount it was to pay for the property) to said Ramey to hold as trustee until the conditions upon which it was to purchase the property were complied with. The $5,250 was deposited by said Ramey with the appellant bank, and the bank passed the amount to his credit as trustee on its books. The oil company claimed said conditions were never complied with, and, joined by Ramey, commenced and prosecuted this suit to rescind the agreement in question and to recover back the $5,250. In its pleadings the bank treated the agreement as one made by Brogan for it, and claimed it had complied with its undertaking thereunder and that the money deposited by Ramey as stated belonged to it. After hearing the evidence the court instructed the jury to return a verdict in favor of the oil company and Ramey, and, such a verdict having been returned, rendered judgment in their favor against the bank for said $5,250 and interest. Whereupon the latter prosecuted this appeal.

Lasseter & Simpson, of Tyler, for appellant.

Bulloch & Ramey, of Tyler, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The evidence was conflicting as to whether the purchase by the oil company of the property in question was conditioned

on a transfer to it of the battery company's lease on the building in which the latter carried on its business. Hence the action of the trial court in peremptorily instructing the jury as he did cannot be upheld (and the oil company and Ramey do not contend it could be) on the ground that it conclusively appeared, as it did, that the lease was never so assigned.

The theory on which the court so instructed the jury (we infer from statements in the briefs of the parties) was that it appeared as a matter of law that the purchase of the property by the oil company was on a condition not complied with, to wit, the tender to it of title to the property satisfactory to its attorney, Ramey. As we understand it, appellant is not in the attitude of contending to the contrary of such a theory. Its contention is, it seems, that while the agreement was so conditioned and while a title satisfactory to Ramey was never tendered, it did tender to the oil company a good merchantable title to the property, which Ramey refused to approve.

[2] But the fact, if it was a fact, that the bank tendered such a title and Ramey refused to approve it was not a reason why the court should not have instructed the jury as he did, unless such refusal was due to bad faith on Ramey's part. The rule applicable is stated as follows in 39 Cyc. 1509, 1510:

"It is perfectly competent for the parties to stipulate that the title of the vendor shall be such as will be pronounced good and merchantable by an attorney, title or trust company, or other third person, and the purchaser will not be required to take a title not so pronounced good, so long as there is good faith, although the court may deem it good under the law. Under such a contract the approval or disapproval by such third person is conclusive, if made in good faith and with no improper motive, although in the opinion of the court the title may be good as a matter of law."

And in 6 R. C. L. 956, after declaring that the approval of the party designated by the purchaser is a condition precedent to a right in the vendor to recover for the price, it is said:

"In the absence of fraud or bad faith in the conduct of such party in respect of the fact of his approval or the withholding of it, his judgment or determination is to be accepted as final and conclusive. No mere error or mistake of judgment will vitiate his determination. The very object of his appointment is to prevent and exclude contention and litigation; and hence nothing short of fraud or mala fides in the exercise of his power to reject or approve the article contracted for will dispense with the strict legal effect of the condition precedent."

The rule is illustrated by the cases cited at the places specified in Cyc. and R. C. L. and by cases as follows: Giles v. Union Land Co. (Tex. Civ. App.) 196 S. W. 212; City of Amarillo v. Slayton (Tex. Civ. App.) 208 S. W. 967; Davis v. Tate (Tex. Civ. App.) 242 S. W. 761; Blomstrom v. Wells (Tex. Civ. App.) 239 S. W. 227; Thurman v. City of Omaha, 64 Neb. 490, 90 N. W. 253; Leroy v. Harwood, 119 Ark. 418, 178 S. W. 427; Ives v. Bank, 140 Mo. App. 293, 124 S. W. 23; Kenny v. Walden, 130 Ky. 88, 113 S. W. 61; Quisenberry v. Grant, 20 Ala. App. 576, 104 So. 284; Realty Co. v. McDonald, 166 Cal. 426, 137 P. 21; Curtis v. Roberts, 104 Okl. 172, 230 P. 916; Flower v. Coe, 111 Neb. 296, 196 N. W. 139; Pacific Telephone & Telegraph Co. v. Davenport Independent Telephone Co. (C. C. A.) 236 F. 877.

[3-6] The rule being as stated, and the presumption being that Ramey acted in good faith in the matter (White v. Downs, 40 Tex. 225, 233), it devolved upon the bank to both plead and prove that the refusal of Ramey to approve the title tendered by it was due to bad faith on his part (Houx v. Blum, 9 Tex. Civ. App. 588, 29 S. W. 1135. The bank insists it pleaded such bad faith, and we agree it did as to the refusal in the first instance, when, after alleging in its answer that it secured title to the property by an oral transfer thereof from the battery company, which it offered to pass to the oil company, it charged that Ramey, instead of approving such title, "without cause or reason, made an eccentric demand that it foreclose, through courts, its chattel mortgage lien on the chattels." But we think the bank failed to prove the charge, and that the trial court did not err when he instructed the jury as he did, because the evidence did not warrant a finding that Ramey acted "without cause or reason" when he refused to approve the title based on such oral transfer. It appeared in the evidence that the battery company was indebted to others than the bank and was insolvent at the time it was alleged to have made the oral transfer to the bank. It appeared further that the transfer to the bank was of property worth $5,250 to satisfy indebtedness of $3,000 the battery company owed it. It is not doubted that an insolvent debtor has a right to pay indebtedness he owes with property he owns, but it is well settled that a creditor has no right to receive from such a debtor property in value more than is reasonably necessary to satisfy the indebtedness, and that if he does receive more other creditors have a right to have the transaction set aside as fraudulent. La Belle Wagon Works v. Tidball, 69 Tex. 161, 6 S. W. 172; Coughran v. Edmondson, 106 Tex. 549, 172 S. W. 1106; Buelin v. Smith, 294 S. W. 317.

The facts and law being as stated, we think the trial court not only had a right to say that the bank had failed to discharge the burden on it of proving bad faith on the part of Ramey when he refused to approve the title in it based on the oral transfer, but also had a right to say it conclusively ap-

peared that sufficient cause and reason did exist why he should not approve that title.

[7] Whether the evidence made an issue as to whether Ramey acted arbitrarily in refusing to approve the title to the property acquired by the bank as the purchaser at a sale made under a judgment afterward obtained by it against the battery company need not be determined, for the bank did not allege that he acted in bad faith when he refused to approve the title it so acquired. The bank insists it appeared the title it tendered the oil company was a good one and that the refusal of Ramey to approve it was not the reason why the oil company refused to accept it, but was used to conceal its real reason, to wit, its failure to secure the lease the battery company had on the building it used to carry on its business. The answer to the contention lies, we think, in the fact that if the oil company had a legal right to have Ramey's approval of the title before it completed the purchase of the property, it was immaterial what its motive was for asserting the right. Collin v. Osburn, 161 Cal. 659, 120 P. 755; New Publication Co. v. Stern (Sup.) 127 N. Y. S. 393.

The judgment is affirmed.