## INTERIOR LINSEED COMPANY v. BECKER-MOORE PAINT COMPANY, Appellant.

### Division Two, February 16, 1918.

1. **WRITTEN CONTRACT: Extraneous Evidence: Letters.** If the written contract is not entirely definite and clear, and free from ambiguity in its meaning and purport, or if its terms are susceptible of more than one meaning, so that reasonable men may fairly and honestly differ in the construction of it, then extrinsic evidence, either written or parol, is admissible to resolve such ambiguity and arrive at the true intention of the parties. If the contract be such, contemporaneous letters, and subsequent letters, written by the parties, in which they express their understanding of the contract, are admissible.

2. ———: **Circumstances.** The written contract should also be read in the light of the surrounding circumstances, in order the more perfectly to understand and explain the meaning and intent of the parties.

3. ———: ———: **Prepared by Seller: Contra Proferentem.** The fact that the contract of sale and purchase, signed by both parties, is one prepared by the seller, whose agents used his printed form, prepared and kept on hand by him for use in making sales and designed to afford to him the largest possible measure of protection in making such sales, is to be borne in mind in construing the

273 Mo.—28

sales contract sued on, and requires that any doubt in its terms be resolved in favor of the buyer.

4. ———: Sales: Date of Delivery: Within Specified Time: Explained by Seller's Letter. The contract, written by the seller on one of his printed forms, provided that "the seller hereby sells and agrees to deliver and the buyer hereby purchases and agrees to receive 320 barrels . . . of linseed oil, for shipment in car-load quantities as follows, and within ten days of specified dates: ——— Barrels, January; ——— barrels, February; . . . ; 320 barrels, October . . . f. o. b. cars or factory, St. Louis . . . Buyer to furnish specifications for shipment in ample time to enable seller to execute order within period or periods named above." Both seller and buyer had offices in St. Louis, where the contract was made, but the seller kept its main supply of oils in Minneapolis, from which place carload shipments were made. Certain deliveries were made on various dates between October 14th and 20th. On October 20th the buyer ordered one car "for immediate shipment," and in several conversations within the next few days urged the seller to effect the shipment as quickly as possible. The market price of oil was declining, and on October 31st the buyer wrote the seller that his customer would refuse to receive the car unless delivery was made on that day. It arrived on November 6th, was tendered to the buyer on the 7th, and by him refused, and was sold by the seller, who brings suit for the difference between the price received and the contract price. *Held*, that by the use of the words "within ten days of specified dates" and then the insertion of the word "October" on the blank line, there was no intention to specify any particular date of delivery, but the natural inference is that delivery was to be made within a period of time, namely, October, and the reasonable interpretation of the contract is that the seller was required to deliver during the month of October, provided the buyer furnished shipping directions in time to permit the seller to make delivery on or before the end of the month; but the time of shipment is obscurely stated, and therefore a letter written by the seller to the buyer on the same day the contract was drawn, in which he confirmed the verbal sale theretofore made of "320 barrels of linseed oil for delivery in the month of October," was competent, and removed the ambiguity as to date of delivery, and the seller is not entitled to recover.

5. DATE: October. The word "October," standing alone, does not connote a date, much less a "specified date," unless some other word or phrase is added to show that it was used to mean something which its ordinary use does not imply. Standing alone it implies a period of time. The word "date," in its legal and in its ordinary sense, imports the day of the month, the month and the year; it means a given point of time—the point at which something takes place or is appointed to take place.

Appeal from the St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

REVERSED.

*J. L. Hornsby* for appellant.

(1) Whilst a written instrument is the consummation of all previous negotiations, and. its meaning, if clear, cannot be subverted or varied by extrinsic evidence, yet if the meaning of the written contract is obscure or ambiguous, it is always competent to receive parol or other testimony in order to explain the obscure or ambiguous language, ●by showing the situation of the parties, the surrounding circumstances and the relation which the words of the writing bear to the facts constituting the subject of the contract. Ellis v. Harrison, 104 Mo. 279; Edwards v. Smith, 63 Mo. 126; Black River Co. v. Warner, 93 Mo. 384; Mfg. Co. v. Car Co., 210 Mo. 735; Const. Co. v. Tie Co., 185 Mo. 62; Publishing Co. v. McNichols, 170 Mo. App. 709; Hemholz v. Everingham, 24 Wis. 266. (2) The formal written contract is ambiguous and obscure, and for this reason comes within the rule permitting the introduction of parol or other evidence to explain it. Bouvier, Law Dictionary; Abbot's Law Dictionary; Fish v. Hubbard, 21 Wend. (N. Y.) 658; Graham v. Hamilton, 27 N. C. 428; 17 Cyc. 664. (3) An ambiguous contract is to be interpreted against the seller. 2 Cyc. 279; Morgan, Legal Maxims; Peloubet, Legal Maxims, p. 16. It is a well-settled rule of construction that words will be construed most strongly against the party who used them, he being responsible for ambiguities in his own expressions. 9 Cyc. 590; 2 Bouvier, Law Dict. (3 Rev.) 2126. (4) The written contract as explained by the letters in evidence must be construed to mean that plaintiff was required to deliver the oil in question to defendant in the month of October.

*Charles A. Powers* and *Sturdevant & Sturdevant* for respondent.

(1) Every word in the contract in this case has a definite and well understood meaning. No word is used which has a doubtful or double meaning, the interpretation of which can be aided by extraneous evidence. Under such circumstances, evidence outside of the contract to explain the meaning of words used therein, is improper. The court should not consider conversations had or letters written by the parties in interest before or after the execution of the contract, in which the parties attempted to construe the meaning of the contract or of its terms. Where the meaning of the terms used is clear, the opinion of the parties as to the meaning of the contract, is irrelevant. 9 Cyc. 590. (2) When goods are contracted for shipment in carload quantities, the word "shipment" is used to express the idea of goods delivered to the carrier for the purpose of being transported from one place to another, and the agreement for "shipment" is that the shipper will place on board the carrier the goods to be transported. 35 Cyc. 2016; 25 Am. & Eng. Ency. Law, p. 852 note 4; 7 Words & Phrases (1 S.), pp. 6487, 6489; Century Dictionary, "Shipment;" Webster's New International "Shipment;" Webster's New International, "Ship." (3) The general rule is, that wherever the parties oblige themselves to the performance of duties within a certain number of days, they have until the last minute of the last day to perform their obligation. Cousins v. Bowling, 100 Mo. App. 456; 35 Cyc. 177. (4) Where a buyer contracts for the shipment of goods by carrier, delivery of the goods by the shipper to the carrier ordinarily constitutes delivery. There being nothing in the contract to the contrary, the place of delivery is the place where the goods are, when sold. In such case, the point of shipment being the place of delivery, shipment and delivery are for all practical purposes the same. And the fact that under the contract freight was allowed to St. Louis, the clause being used in connection with the words

fixing the price only does not affect the rule. State v. Rosenberger, 212 Mo. 654, 657; 35 Cyc. 172, 193; Sharff v. Meyer, 133 Mo. 445, 447; 24 Am. & Eng. Ency. Law, pp. 1069, 1071; Cultivator Co. v. Railway, 64 Mo. App. 311 (4) The contract should be interpreted without recourse to any evidence outside its own contents. The court, however, to aid in such constructions, should look at the contract in the light of the purposes for which the contract was drawn, the conditions and circumstances surrounding the parties, their methods of doing business and the character of their businesses, and their relations to each other. In other words, the court should attempt to place itself in the position of the parties at the time when the contract was drawn, with a view of all the circumstances then existing. The construction of the contract is then strictly for the court. Donovan v. Boeck, 217 Mo. 87; Construction Co. v. Tie Co., 185 Mo. 61; Construction Co. v. Hayes, 191 Mo. 294; Meyer v. Christopher, 176 Mo. 594; 35 Cyc. 96.

FARIS, J.—Plaintiff sued defendant for damages for an alleged breach of a written contract for the sale of linseed oil. On the trial *nisi,* before the court without a jury, plaintiff had judgment for $1523.42, and defendant duly appealed to the St. Louis Court of Appeals. Upon a hearing in the latter court the judgment of the circuit court was affirmed in an opinion by NORTONI, J., in which REYNOLDS, P. J., concurred. To the affirmance of the case ALLEN, J., was constrained to dissent, and to set forth his reasons therefor in an exhaustive opinion (Interior Linseed Co. v. Becker-Moore Paint Co., 190 Mo. App. 1); and since he deemed the opinion held by a majority of the judges of the St. Louis Court of Appeals to be in conflict with the rule announced by this court in the cases of Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, and Ellis v. Harrison, 104 Mo. 270, he asked that the case be certified up to us for decision, which was accordingly done. Hence our jurisdiction.

We have with much interest gone over both of the able opinions filed in this case by Judges NORTONI and ALLEN, and after a careful reading of these opinions, and of the record in the case, we are constrained to adopt the views held in the case by Judge ALLEN. His opinion states fully both the law and the facts of the case, and we find ourselves unable to add to what Judge ALLEN has written, any views which would be at all illuminating. Accordingly we adopt the dissenting opinion of Judge ALLEN, as our opinion, and as the law which ought to apply to the facts of this case. This opinion runs thus:

"On October 14, 1911, defendant, by telephone, ordered of plaintiff 320 barrels of linseed oil. Defendant accepted the order and on the same day confirmed the sale to plaintiff by the following letter:

"We are pleased to confirm verbal sale made to you to-day of 320 barrels strictly pure linseed oil for delivery in month of October at eighty-two cents per gallon f. o. b. your warehouse or factory, St. Louis, Missouri, basis raw on cooperage. Tank car delivery two and one-half cents less. Tank wagon delivery two cents less than cooperage.
"Thanking you for your valued order we beg to remain.

"Plaintiff and defendant are both corporations with offices in the city of St. Louis, though it appears that plaintiff kept its main supply of oil at Minneapolis, Minnesota, from which place car shpments were made. After writing the above letter, and evidently on the same day, plaintiff mailed to defendant the contract sued upon, which was signed by defendant through its president and returned by mail to plaintiff. According to the testimony of plaintiff's manager, who represented it throughout the transaction and signed the contract for it, no communications were had with defendant in reference to the sale between the time of the writing of the above letter and the execution of the formal contract. This contract consists of a printed form with certain blank spaces filled in by typewriting. The contract in full is as follows, the typewritten parts thereof appearing in italics, viz.:

"CONTRACT, Made at *St. Louis, Mo. this* 14 day of *October*, 1911 between INTERIOR LINSEED COMPANY of St. Louis, Mo., hereinafter called the seller, and *The Becker-Moore Paint Co.* of *St. Louis, Mo., hereinafter called the buyer.*

"The seller hereby sells and agrees to deliver and the buyer hereby purchases and agrees to receive *320* barrels containing about 50 gallons each (7½ pounds in a gallon) of pure linseed oil, for shipment in carload quantities as follows, and within ten days of specified dates:

| ——— Bbls. January. | ——— Bbls. June. | 320 Bbls. October. |
| ——— Bbls. February. | ——— Bbls. May. | ——— Bbls. September. |
| ——— Bbls. March. | ——— Bbls. August. | ——— Bbls. December |
| ——— Bbls. April. | ——— Bbls. July. | ——— Bbls. November. |

*"Tank wagon two cents less and tank car two and one-half cents less than cooperage* raw linseed oil at *eighty-two* cents, boiled linseed oil at *eighty-three cents* per gallon, f. o. b. cars *or buyer's factory, St. Louis, Mo.* freight allowed *to St. Louis, Mo.* Buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above. In absence of specifications a carrying charge is to accrue of one-half cent per gallon per month or any part of the month, as long as seller shall be willing to carry the same.

"Failure to deliver any installment of oil shall not be breach hereof as to other installments.

"Terms: Net cash in thirty days from date of invoice; or, if payment is made in ten days from date of invoice, a discount of one per cent will be allowed.

"In case of default in payment of any installment or purchase money when due, the whole sum owing by the buyer shall become due at once, and further deliveries shall be made only for cash.

"Delay of seller caused by fire, differences with workmen or inevitable accidents excepted.

"Orders for tank cars to be filled by capacity of car convenient to ship with minimum of about 5,000 gallons and maximum of about 10,000 gallons. Minnesota State weights to govern.

"Over or under shipment of contract necessitated by car capacity is to be settled at market price on date of last car shipped.

"Special oils at seller's usual difference. The whole contract is stated herein.

Accepted: THE BECKER-MOORE PAINT Co., INTERIOR LINSEED Co.,

"W. E. BECKER, Prest.                    By J. R. GINN, Mgr.

"Certain portions of the oil thus sold were delivered, in various amounts, in tank wagons or 'cooperage' at various dates after October 14th and prior to October 20, 1911. On the last mentioned date defendant wrote plaintiff as follows:

"Please enter our order for immediate shipment for *one tank car*, capacity about ten thousand (10,000) gallons raw linseed oil, routing same to us care of the Terminal Railroad Association, 16th Street Yards, St. Louis, Mo.

"This shipment to be applied against our contract for October delivery.

"Kindly acknowledge receipt, advising about how soon we can expect shipment, obliging.

"On the same day plaintiff acknowledged receipt of this order by the following letter, viz.:

"We have your kind favor of this date ordering 10,000 gallons tank car of Raw Linseed Oil, for shipment, care Terminal R. R. Association, St. Louis, Mo. To be applied against your October contract. This will go forward to our factory Minneapolis, Minn., where it will have immediate attention.

"The evidence is that the president of defendant company had several conversations with plaintiff's manager subsequent to October 20th, and commencing perhaps three or four days thereafter, urging plaintiff to effect delivery of this tank car of oil as quickly as possible. It appears that defendant had resold the oil, and that its purchaser was urging delivery; and that defendant was anxious to make delivery because of the fact that the market had begun to decline. And the evidence is that the market price continued to steadily decline until November 1st, and thereafter. It is said that defendant's president received no satisfaction as to when delivery would be made. On October 31st defendant wrote plaintiff that defendant's customer would refuse to receive the tank car of oil unless delivery was made on that day, saying: 'You will consequently govern yourself accordingly in your delivery to us. You will note in referring to the date of our order for this tank car that we gave you the required ten days' notice as provided in your contract forms.'

"The tank car of oil was not shipped from Minneapolis until October 30th. It appears that it reached St. Louis in November 6th, and was tendered to defendant on the following day, to-wit, November 7, 1911. Defendant refused to accept it; and, after notice to defendant,

plaintiff sold the oil for the best price obtainable therefor, to-wit, $6868.40, being $1392.61 less than the contract price, and brought this suit to recover the loss thus entailed, together with certain demurrage and switching charges.

"The crucial question involved is whether the foregoing written contract executed by the parties is free from any uncertainty or ambiguity in its terms, so as to preclude the consideration of extrinsic evidence as an aid to the construction thereof and to ascertain the true intent of the parties. The learned trial judge, in an option filed, which for the most part is adopted by my Brother NORTONI, held that the writing was altogether clear and definite, and that extrinsic evidence, though consisting in part of plaintiff's letter written at the time of the transaction, could not be looked to in construing its terms. The cause was tried before the court without a jury, and though the aforesaid letters, as well as oral testimony relative to the transaction, were admitted in evidence, the court in deciding the case excluded all of the same from consideration. I am persuaded, however, that the learned trial judge, for whose opinion I have great respect, erred in so doing.

"The pertinent question is: Can this contract be said to be entirely definite and clear, and free from any ambiguity in its meaning and purport? If its terms are susceptible of more than one meaning, so that reasonable men may fairly and honestly differ in the construction thereof, then extrinsic evidence, either written or parol, is admissible to resolve such ambiguity in order to arrive at the true intention of the parties. A rule of interpretation, equally well settled, is that the writing should be read in the light of the surrounding circumstances in order the more perfectly to understand and explain the intent and meaning of the parties [Laclede Construction Co. v. Moss Tie Co., 185 Mo. l. c. 62, 84 S. W. 76; Williams v. Railroad, 153 Mo. l. c. 534, 54 S. W. 689; Pulitzer Pub. Co. v. McNichols, 170 Mo. App. 709, 153 S. W. 562.]

" ' "The object of interpretation always is, or should be, to reach the actual intention of the parties. We mean, of course, that intention as expressed in the writing they employ to portray it, and consistent with the latter. When the subject-matter to which such a writing refers is not *entirely definite* and clear, it is permissible, and obviously just, to receive in evidence a description of the circumstances of its execution that the court may be placed, as near as may be, in the situation of the contracting parties with a view the better to adjudge in what sense the language used was probably intended by them. [Swett v. Shumway, 102 Mass. 365; Keller v. Webb, 125 Mass. 88.]" "Putting a construction upon a document means ascertaining the meaning of the signs or words made upon it, and their relation to facts. . . . In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers, or may have been intended to refer, or which identifies any person or thing mentioned in it." ' [Laclede Construction Co. v. Moss Tie Co., supra, l. c. 62; Coffman v. Saline Valley R. R. Co., 183 Mo. App. 622; Morey v. Feltz, 187 Mo. App. 650.]

"In the case before us, if one were forced to construe the written contract by an inspection of its terms, without the aid of the evidence excluded from consideration, it appears that the reasonable construction thereof would be quite different from that placed upon it below. The contract provides that the seller sells and agrees to deliver, and the buyer purchases and agrees to receive, 320 barrels of linseed oil, 'for shipment in carload quantities as follows, and within ten days of specified dates:' Then follow the months of the year arranged so that the number of barrels of oil to be delivered in one or more thereof may be designated. In front of 'October' the figures 320 are inserted. Prices are then stated, followed by the expression, 'f. o. b. cars or buyer's factory, St. Louis, Missouri.' A further provision is: 'Buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above.'

"The construction placed upon the contract below is that 'October' is to be taken as a *specified date,* within the meaning of the preceding phrase, 'within ten days of specified dates;' and that therefore plaintiff, by the term of the contract, had all of the remainder of October and the first ten days of November, 1911, in which to make delivery of any of the oil so sold. I do not agree that this is a reasonable interpretation of the contract. In construing its terms it is to be borne in mind that the instrument is one prepared by the seller, whose agents used its printed form prepared and kept on hand by the seller for use upon such occasions, and evidently designed to afford it the largest possible measure of protection in making any such sale. The doctrine of *contra proferentem* therefore applies with much force, and simple justice demands that any doubt in the terms of the instrument be resolved in favor of the buyer.

"The position of the phrase 'within ten days of specified dates,' is to be noted. I do not agree with the learned trial judge that the language used is necessarily to be given the same meaning as though it were 'within ten days of specified dates as follows, to-wit:' The form of expression here employed lends support to the view that the words 'within ten days of specified dates' were intended to have application only in the event that *specific dates* for making delivery were in fact inserted below in the printed form, and not a period or periods within which deliveries were to be made. The language preceding this phrase is complete to the effect that a sale of a certain quantity of oil has been made 'as follows.' i. e., at prices and to be delivered as below indicated. The succeeding words, 'and within ten days of specified dates,' appear to have been put into the printed form to allow a margin of ten days for delivery in case any precise date be inserted in the blanks below—it being recognized that such specific dates might or might not be inserted. Hence the language is not 'the following specified dates,' or 'specified dates as follows.' In other words, the reasonable interpretation of this

language, found in such a printed form, seems to be that the seller agrees to deliver within such period or periods as might be designated below in the columns of months; but if in fact in making a sale any *specific date* is inserted, then the seller does not agree to deliver on such precise date, but within ten days thereof.

"In the instant case it seems altogether clear that no 'specific dates' were inserted to which the phrase in question could apply. The month 'October,' standing alone, cannot be taken as a date, much less a *specified date,* unless something appears to show that the word was used to mean something which its ordinary use does not imply. A date is 'the point of time at which a transaction takes place or is appointed to take place; a given point of time.' 'Date' means the same in its legal as in its ordinary sense, and imports the day of the month, the month and the year; the day of the month being as essential a part of the date as the month or the year. [See Heffner v. Heffner, 48 La. Ann. 1088; Succession of Robertson, 49 La. Ann. 868, 62 Am. St. 672; 2 Words and Phrases, 1830.] By 'October,' is evidently meant what then remained of October, 1911. But this is in no sense a *specified date,* but a *period of time.* The natural inference is, I think, that there was here no intention to specify any particular date or dates of delivery, but that delivery was to be made within the period named. And later in the contract reference is made to 'the period or periods named above.'

"The words 'specified dates' are thus to be regarded not as meaning that dates, as such, are necessarily mentioned or 'specified' below, but as being equivalent to the words 'such specific dates as may be below mentioned.'

"Is it reasonable to suppose that there would be any necessity for providing for an additional period of ten days for delivery, where the contract provides for delivery within a certain named period? If the understanding and agreement is that delivery is to be made within a certain period, why should not that

period be stated without more? Surely the seller would have no occasion, in good faith, to make provision in its printed form against making delivery within such period as might be plainly stated in the contract, and where the entire length of the period agreed upon may be named. It is quite different, however, if specific dates for deliveries are inserted in the printed form. The seller's main supply of oil was at Minneapolis, though it kept on hand a supply in St. Louis; and it might or might not be found practicable to deliver any particular amount on a precise day named, and hence the safeguard of a ten days' clause would be reasonably necessary for the seller's protection.

"This seems to me to be the reasonable construction to be placed upon this vital part of the contract. It ascribes meaning and intendment to all of the language thereof. It is in no way inconsistent with the subsequent clause providing as follows: 'Buyer to furnish specifications for shipment in ample time to enable seller to execute order within the period or periods named above.' This view of the contract merely means that the seller was here required to deliver during the month of October, 1911, provided that the buyer furnished shipping directions in time to permit the seller to make delivery on or before the end of the month. It cannot be doubted that ample time was given plaintiff in which to make delivery in October. The order for the immediate shipment of this tank car was placed on October 20th; and the facts show that this afforded ample time for shipment thereof from Minneapolis for delivery during October. In fact the car was shipped in much less time when the seller saw fit to start it on its journey.

"It was contended by appellant below that the ten days' clause meant that the buyer was to give specifications for shipment ten days before delivery could be demanded. It appeared from appellant's letter of October 31, 1911, that it so viewed the contract; and this theory was put forward at the trial below. The trial court said, however, as to which I agree, that this would

give no effect to the later clause making special provision as to specifications for shipment, i. e., that shipping directions were to be furnished in *ample time*—whatever this might be—to enable the seller to execute the order within the period or periods named. I am satisfied that the contract does not bear the interpretation thus sought to be put upon it, but I think that the reasonable construction of its terms is as above indicated. The trial court's construction makes 'October' a specified date; whereas in fact it is not a date, but a period of time. Such construction, permitting the seller to acquit its obligation by delivery any time within ten days after the end of October, i. e., by November 10, has the effect of reading into the contract 'October 31st' in place of 'October.' The natural meaning of '320 '' October' (the ditto marks meaning barrels) is that 320 barrels are to be delivered in October—qualified by the 'ample time' clause which follows.

"Some stress is laid upon the fact that unless 'October' is to be taken as a specified date then no such date appears to which the term 'within ten days of specified dates' could have reference, and effect is therefore not given to this provision of the contract. But the rule that the whole contract should be construed so as to give meaning and effect, if possible, to all parts thereof, is not here applicable in the same way and to the same extent as it would be were the contract one specially drawn to cover this particular sale. Where a printed form is used, as here, many words may be contained therein which do not apply to the particular transaction. Other words are to be found in this instrument which are not utilized in attempting to express the terms of this contract. In such cases it is not so essential that effect be given to every word of the printed form as it is to account for the presence of such words therein, as having a meaning in the connection in which they are used. In the view herein taken of this instrument the presence of the ten days provision is accounted for, and meaning given to it, though it is regarded as not intended to

apply to this particular transaction, since a period of time, and not any specified date, was named.

"The argument is advanced by respondent that the contract merely calls for *shipment* within whatever may be the time specified, and not for delivery within such time. But there is little, if any, room for this argument, for the contract provides for delivery 'f. o. b. cars, or buyer's factory, St. Louis, Missouri.'

"Though the construction above placed upon the formal contract appears to me to be the most natural and reasonable interpretation of its terms, it cannot be doubted, I think, that the time for delivery is obscurely stated and the contract ambiguous in this respect. And under the circumstances I cannot understand why any court should feel itself compelled to close its eyes to the truth when it is at hand. Whatever ambiguity there may be in the contract, when read alone, at once disappears in the light of the extrinsic evidence adduced to explain it. The letter written by plaintiff on the very day on which the contract is dated shows in unmistakable terms what was the intention of the parties. It confirms the verbal sale to plaintiff, previously made on the same day, of 320 barrels of linseed oil, 'for delivery in month of October . . . f. o. b. your (defendant's) warehouse or factory, St. Louis, Mo.' There can be no doubt as to the meaning of this language. And, as stated above, the formal contract was executed almost immediately thereafter, with no communications between the parties in the meantime; and it must be presumed that the contract sought to express the true terms of the sale. The later letters passing between the parties tend to confirm this for they refer to defendant's 'contract for October delivery,' and to its 'October contract.' It cannot be imagined that a sale *for delivery in October,* or even the expression 'October delivery' could mean that the seller had not only all of the remainder of October but one-third of November as well in which to deliver the goods.

"The rule for excluding evidence in cases of this character proceeds upon the theory that, where the

writing is entirely definite and clear, to permit either party to show that the intention was other than as therein expressed would tend to destroy the value of written contracts. But in my judgment the rule has here no application, but the case appears to clearly fall within the rule authorizing the admission and consideration of extrinsic evidence. Surely this contract, upon a printed form furnished by the seller, which is a strange jumble of words and phrases, wherein, a vital element of the contract is vaguely expressed by '320 '' October' *is by no means entirely definite and clear.* For reasons mentioned above, it is to be construed most strongly against the seller, any doubt being resolved in the buyer's favor. I am firmly convinced that a rational construction to be placed upon it is one contrary to plaintiff's contention and which would defeat plaintiff's recovery. On the other hand when once light is shed upon it by the evidence excluded from consideration below, no doubt remains as to the meaning of its terms; for it is then made to appear beyond question that the intention was to provide for delivery at St. Louis within the month of October. Such is the solemn written admission of plaintiff as to the terms of the sale, made at the very time when the transaction took place. And it is a case in which time is of the essence of the contract. It was tried upon that theory below; and manifestly correctly so, for the commodity was one dealt in upon the market and in the price of which a brief period of time may make great difference. And it appears that the market price was declining during the latter part of October and thereafter.

"The contemporaneous written declaration and admission of plaintiff in its letter affords altogether satisfactory proof of the intention of the parties. 'If evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time of their understanding of them, ought not to be excluded. Such declarations, if satisfactorily established, would seem to be stronger and more conclu-

sive evidence of the intention of the parties than proof of facts and circumstances, since they come more nearly to direct evidence than any to be obtained, whilst the other is but circumstantial.' [Laclede Construction Co. v. Moss Tie Co., supra, l. c. 68.]

"In this view it was plaintiff, and not defendant, that breached the contract. And to permit plaintiff to recover upon the theory that the extrinsic evidence aforesaid may not be looked to, would, in my judgment, have the effect in law of perpetrating a fraud upon the defendant.

"I am therefore of the opinion that plaintiff is not entitled to recover, and that the judgment should be reversed."

Without more, we are, we repeat, constrained to agree with the language and conclusions of Judge ALLEN, and to hold (a) that the contract was so lacking in definiteness, certainty, and clarity, as to make of it one permitting explication through the aid of the extraneous circumstances (Laclede Construction Co. v. Moss Tie Co., 85 Mo. 25; Ellis v. Harrison, 104 Mo. 270); and (b) that when so construed, the contract was clearly one which required the delivery of the oil in the month of October, and therefore one on which, since plaintiff breached it, no recovery can be had.

These extraneous circumstances consist in all pertinent matters of certain letters which passed between the plaintiff and the defendant. Three of these letters are set out in full by Judge ALLEN, and upon one of them he comments, quoting therefrom an admission by plaintiff, which in his view shows conclusively that the sale was for October delivery. While, as stated, the other two letters are set out in full in the opinion, no comment or argument is based upon them. The first of these letters bears date October 20, 1911, was written by defendant to plaintiff, and requested the *"immediate shipment"* of one tank car of oil *"to be applied against our contract for October delivery."* Replying to the above-mentioned letter, by a letter of the same date, plaintiff promised that "immediate attention" would be given to making

273 Mo.—29

the required shipment, which was "to be applied against your (defendant's) October contract." When this contract is read in the light of these extraneous facts, and of those so ably pointed out in Judge ALLEN's opinion, we think no other conclusion can be reached, except the one Judge ALLEN has reached.

It follows that the case should be reversed, without remanding. Let this be done. All concur.