William FISHER, Plaintiff-Appellant,

v.

Frank F. MICELI, D. L. Miceli and J. J. Miceli, d/b/a Frank Miceli and Sons Realty and Building Company, and Melba D. Roettger Fisher, also known as Mrs. Donald Long, Defendants-Respondents.

No. 45047.

Supreme Court of Missouri.

Division No. 1.

June 11, 1956.

Motion for Rehearing or to Transfer to Court En Banc Denied July 9, 1956.

Charles G. Kratovil and Joseph T. Strubinger, St. Louis, for appellant.

Meyer, Hoester & Coleman, by Robert G. J. Hoester, Clayton, for respondents Frank F. Miceli, D. L. Miceli and J. J. Miceli, d/b/a Frank Miceli and Sons Realty and Building Co.

C. Arthur Anderson and John A. Eigel, St. Louis, for respondent.

HOLMAN, Commissioner.

This is an equitable action in which plaintiff, William Fisher, seeks a decree to the effect that he is the owner of a one-half interest in certain real estate, the record title to which is in his former wife, Melba Fisher Long, a defendant herein. In the alternative he seeks to establish a lien on the property, in the nature of a resulting trust, for an amount of money alleged to be due plaintiff from defendants. The parcel of land in controversy was purchased from Frank F. Miceli, D. L. Miceli and J. J. Miceli, who were engaged in the real estate and building business, and they are also made defendants in this action. The trial court found the issues in favor of defendants and accordingly entered a decree dismissing the petition of plaintiff. From this decree plaintiff has duly appealed. Since title to real estate is involved our jurisdiction is apparent. Article V, Section 3, Constitution of Missouri 1945, V.A. M.S.

Plaintiff and Melba first married in 1925. She obtained a decree of divorce in 1929. They were remarried in 1935 and lived together until June, 1951. Melba was granted a second divorce in the fall of 1951 and shortly thereafter married Donald Long.

At the outset we think it may be fairly stated from the evidence that Melba was the financial mainstay of this couple. To a large extent it appears that she handled the money and made the investments for them. She had worked for the same employer since 1931. Plaintiff was a waiter. His earnings were small and he changed jobs often. His one business venture was a failure. According to Melba he drank heavily. It appeared to be necessary for Melba to work because of the small earnings and instability of plaintiff.

In 1938 plaintiff and Melba purchased a residence at 4238 W. San Francisco Avenue in St. Louis. A few months thereafter they traded that property for a more desirable residence located next door and which they occupied until August, 1950. In 1949 they purchased a lot on Denness Hills Drive and contracted for the construction of a house thereon. This lot, as well as those on San Francisco Avenue, was deeded to both of the Fishers. However, in December 1949,

plaintiff agreed with Melba that the title to the Denness Hills property be placed in her name alone and joined in a conveyance to accomplish that result. He said he did this to "keep peace in the family" since she claimed that her money had paid for the property.

For some reason the Fishers did not move into the Denness Hills residence upon its completion but listed it for sale. Shortly thereafter they became interested in acquiring a residence in an area being developed by defendants Miceli. They were shown various lots by N. L. Richardson, an employee of Frank Miceli and Sons and, on March 28, 1950, entered into a contract to purchase the lot at 1643 Veronica Street from the Micelis for the sum of $14,300, the seller to construct a five-room brick bungalow thereon according to certain plans and specifications. The manner and time of paying the purchase price was specified in the contract but it is apparent from the contract that the major portion thereof would be obtained from the sale of the property on W. San Francisco Avenue, which the Fishers thereafter listed for sale with the Miceli agency. A purchaser for the property was found and the sale of same was closed on June 22, 1950. The net amount of $11,938.43 due the Fishers from this sale was retained by D. L. Miceli, it being agreed by all parties that such was to be applied to the payment of the purchase price of the Veronica Street property. On August 19, 1950, Melba paid the balance due thereon and received a deed which conveyed the title to her alone. On or about that date the Fishers moved into the new home.

Plaintiff testified that he did not know that the Veronica transaction had been finally closed and the deed delivered until, in the spring of 1951, a notice came from the assessor indicating that the property was assessed to Melba. He said he thought the matter of closing had been delayed because there was some yard work yet to be done and for that reason he had made no inquiry. He testified that when he learned the state of the title he asked Melba to put it in both their names and when she re-

fused, he left her on June 4, 1951. This suit was instituted about a year later.

We will now consider the evidence relating to the agreement as to how title would be taken to the Veronica Street property. Of course, it should be here noted that plaintiff relies mainly on the fact that both he and Melba signed the contract to purchase the property and that the proceeds of the sale of the San Francisco Avenue property (held as tenants by the entireties) was applied to the payment of the purchase price of the Veronica property. However, he testified that after he deeded away his interest in the Denness Hills property he told his wife that any property they purchased thereafter "would be put in both names." He further stated that at the time of signing the instant contract, and also at the time of closing the sale of the property on San Francisco Avenue, he told Melba and others present that the title to the Veronica property was to be in both names, but she said nothing in response.

Defendants presented considerable evidence to the effect that plaintiff agreed that the title to the Veronica property be placed in the name of Melba alone. Plaintiff objected to this evidence as being in violation of the parol evidence rule and it was admitted subject to that objection. Melba testified that when they decided to buy this property she told plaintiff that she wanted the title in her name and he said it was "perfectly all right with him"; that thereafter, when the contract was dictated in both names, she protested the use of his name and the real estate agent said it was just a formality and that the deed would be in her name, and Mr. Fisher said that was right; that after the contract was signed she watched D. L. Miceli make a notation on his copy of the contract to the effect that title was to be in her name; that in August she received a statement from Miceli showing the balance due on the purchase price, and when she showed it to plaintiff he said, "It is your house, so see that you pay for it the best you can"; that shortly thereafter she paid D. L. Miceli the balance and received the deed which she had him record for her.

D. L. Miceli testified that when Richardson first brought the deal in, he stated that it had to be in Mrs. Fisher's name alone; that at the time the contract was accepted by him (with Mr. Fisher present) it was stated by Mrs. Fisher that title was to be in her name or she wouldn't buy it; that at that time he took a duplicate original of the contract and (in their presence) circled the signature of Melba D. Fisher and wrote "Title one" in order to remind him to prepare the deed with Mrs. Fisher as the only grantee; that at the time of closing the deal for the sale of the San Francisco Avenue property it was stated that title to the Veronica property was to be in Mrs. Fisher, and Mr. Fisher made no objection. Frank F. Miceli also testified that at the time he signed the contract approving the sale of the Veronica Street property he asked Mr. Fisher if it was all right to put the title in the name of his wife and he said that it was. Other evidence may be stated in the course of the opinion.

The trial court filed a memorandum in which it found that "plaintiff, William Fisher, consented and agreed that title to the Veronica Street property be put in the name of defendant, Melba D. Roettger Fisher, to be her separate property, and that under the law it was not necessary that plaintiff consent and agree thereto in writing. The plaintiff not only so agreed and consented that defendants Frank F. Miceli, D. L. Miceli and J. J. Miceli, d/b/a Frank Miceli and Sons Realty and Building Company, deliver a deed to defendant Melba D. Roettger Fisher, but he signed the deed to the San Francisco Street property with the understanding that the title to the Veronica Street property would belong to Mrs. Fisher (now Mrs. Long) as her separate estate, thereby relinquishing his interest in the estate by the entirety that existed as to the San Francisco Street property and the proceeds derived therefrom."

■ In this equitable action it is our duty to review the case de novo and in so doing we weigh the competent evidence and reach our own conclusions as to the facts, giving due regard, however, to the more favorable position of the trial court to judge the credibility of the witnesses. Shackleford v. Edwards, Mo.Sup., 278 S.W.2d 775. Moreover, in a case of this nature, a mere preponderance of the evidence will not support a decree for plaintiff. It is necessary that he prove his case by evidence that is clear, cogent and convincing. Meyer v. Meyer, Mo.Sup., 285 S.W.2d 694.

The primary contention of plaintiff on this appeal is that the written contract created an estate by the entireties in him and his then wife, and that parol evidence was not admissible to vary the terms of said written contract or to show that it had been changed or modified. If plaintiff's theory is correct, it would necessarily follow that defendants Miceli failed to comply with the contract when the property was conveyed to Melba alone.

■ In considering the questions presented it may be helpful to state certain well-established rules. Prior and contemporaneous negotiations and oral understandings of the contracting parties are said to merge into their written instrument and, with certain exceptions, that instrument cannot be varied, and a new and different contract substituted therefor, by parol testimony. Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817. Likewise, it is said that subsequent verbal modifications are not allowed to vary the rights of the parties under a written contract required by the Statute of Frauds, Section 432.010 et seq. RSMo 1949, V.A.M.S., to be in writing. Warren v. A. B. Mayer Mfg. Co., 161 Mo. 112, 61 S.W. 644. However, if a written contract appears on its face to be incomplete or ambiguous, extrinsic evidence, either written or oral, is admissible to resolve such ambiguity in order to determine the true intention of the parties. Interior Linseed Co. v. Becker-Moore Paint Co., 273 Mo. 433, 202 S.W. 566.

■ If the instant contract had clearly provided that title was to be conveyed to plaintiff and Melba upon payment of all of the purchase price, then we would agree with the contention of plaintiff that the contract created in them an equitable estate by the entirety, as was held in the cited

case of Hernandez v. Prieto, 349 Mo. 658, 162 S.W.2d 829. It is our view, however, as hereafter more fully discussed, that the contract was ambiguous in regard to the question as to whom the title was to be conveyed and therefore we hold that the trial court properly considered the parol evidence offered for the purpose of resolving that ambiguity.

The contract was written upon a printed form with appropriate blanks filled in by use of a typewriter. We have carefully read the contract and find no provision therein specifically stating to whom title was to be conveyed. Of course, in the absence of any provision, it would perhaps be assumed that it would be conveyed to all persons named as purchasers. However, at the bottom of the form, just under the lines provided for the signatures of purchasers, appear the words "Make Deed to" and thereunder are three lines for the insertion of names. No name or names had been typed or written in these spaces. As previously indicated, however, upon one of the duplicate originals of the contract a circle had been drawn around the signature of Melba D. Fisher and within this circle was written "Title one."

We would perhaps be justified in concluding that the circle and above-quoted words were an abbreviated method of designating that title was to be conveyed to Melba. However, taking the view of this evidence most favorable to plaintiff, we must at least hold that it indicates that title was to be conveyed to only one of the parties and thus the foundation was laid for admission of extrinsic evidence on the issue as to which of them was to be named as the grantee in the deed.

■ We have previously detailed most of the parol evidence (admitted subject to objection) which we have held may properly be considered in determining the stated issue. When this evidence is considered in connection with the contract and the notation thereon, we think the trial court correctly found that plaintiff agreed that the title to the instant property be conveyed to Melba Fisher alone.

In considering this question we do not attach any great significance to the fact that plaintiff joined as a purchaser in signing the contract. It appears on the face of the contract that the proceeds from the sale of the property on San Francisco Avenue was to be applied upon the purchase price for the instant property. That title was in both of the Fishers. It is therefore easy to understand that the Micelis would insist on both being obligated upon the contract in question. D. L. Miceli testified that the notation made by him on the contract was made in the presence of both of the Fishers at the conference in which the contract was finally approved. This notation, when considered in connection with the testimony of D. L. Miceli, is very persuasive.

The oral testimony in support of plaintiff's claim on the question under consideration consisted only of his personal testimony to the effect that the title was to be in both parties. This was refuted by the testimony of Melba, D. L. Miceli and Frank F. Miceli. Mr. Richardson did not remember any conversation at all about the title. The trial chancellor evidently believed the witnesses for defendants. Under the circumstances presented we think it proper that we defer to his findings in that regard.

It is the further contention of plaintiff that since the proceeds from the sale of the San Francisco Avenue property (held as tenants by the entireties) was applied upon the payment of the purchase price of the Veronica property, the said proceeds retained all of its entirety characteristics and Melba was duty bound to take title thereto, at least to the proportionate extent that said amount purchased, in the names of herself and plaintiff. It is also said that plaintiff could not orally convey or relinquish his interest in the said proceeds of the sale of the entirety property. We gather from the foregoing, and other statements in plaintiff's brief, that he here contends that he at least had an equitable title as a tenant by the entirety to said proportionate interest in the property and that Melba held the legal title as a trustee for him to

that extent, and that upon the entry of the decree of divorce his interest became that of a tenant in common. It is not entirely clear to us whether he now contends that he should recover the exact amount he claims to have contributed to said purchase price or a proportionate interest in the present value of the property, but the view we take of the matter makes it unnecessary to determine that question.

There can be no question but that plaintiff had an interest in the proceeds of the sale of the entirety property on San Francisco Avenue. He admits that he consented that the Micelis retain said proceeds and apply the same on the purchase price for the Veronica Street house. We have approved the finding of the trial court that plaintiff consented that the title to said property be conveyed to Melba Fisher as her separate property. Therefore, it would seem that the only remaining issue for our determination is whether that consent could be given orally. Plaintiff, in support of his contention, cites the cases of Frost v. Frost, 200 Mo. 474, 98 S.W. 527, and Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55. An examination of these cases will reveal that they are not in point because they did not involve any issue of consent. In those cases the husband invested the proceeds of the sale of entirety property in real estate or other assets held in his own name. The wife was held to retain an interest in the property but, as stated, there was no contention in those cases that the wife agreed or consented to the change in title.

Plaintiff has cited no case holding that a husband cannot verbally consent that title to real estate may be taken in the name of his wife, even though a major portion of the purchase price may be the proceeds of the sale of property owned by a husband and wife as tenants by the entireties. We have been unable to find such a case, and we do not know of any rule of law that would prohibit such consent under the particular facts and circumstances of this case. We therefore rule this point against plaintiff.

It being our view that plaintiff legally consented that this real estate be conveyed to his wife, it is presumed that he intended it as a provision for her and that no trust for his benefit was intended. Lieberstein v. Frey, Mo.Sup., 92 S.W.2d 114. Plaintiff did not present sufficient evidence to rebut that presumption.

The point is also briefed that the remainder of the purchase price was paid by Melba from funds that were jointly owned, and hence it is said that plaintiff is now entitled to an entire one-half interest in this property. Our ruling on the preceding point will dispose of this contention adversely to plaintiff.

The judgment and decree of the trial court is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.